167 N.J. Super. 57 (1979)
400 A.2d 513
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD L. WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1979.
Decided March 28, 1979.
*58 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Michael R. Ascher, designated counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Ms. Ann Zeloof, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
*59 The opinion of the court was delivered by MORGAN, J.A.D.
Defendant was charged in two separate indictments with possession of a firearm by a person convicted of a crime (N.J.S.A. 2A:151-8) and with homicide while armed (N.J.S.A. 2A:112-1, 2A:113-2, 2A:151-5). Upon the State's motion, without defendant's objection, the two indictments were consolidated for trial before a jury. Defendant was thereafter convicted of manslaughter and of being a convicted felon in possession of a gun. Subsequently, he was convicted of being an habitual offender, an accusation to which he had pleaded guilty.
At all times defendant admitted that he had shot the victim, Richard Cervini, but contended that the killing resulted from an accidental discharge of his pistol. The State contended, on the other hand, that the killing was premeditated and deliberate, and as proof of motive adduced evidence suggesting animosity between defendant and the deceased. On the issue of whether the homicide was accidental, as defendant contended, or at least the result of reckless and criminally negligent conduct constituting manslaughter, as the State contended, the parties introduced conflicting experts' testimony concerning the characteristics of the murder weapon. The jury, however, rejecting the contention that the homicide was intentional in nature, acquitted defendant of both first and second degree murder. By their verdict of involuntary manslaughter, they evidenced their conclusion beyond a reasonable doubt that the homicide was the results of defendant's reckless and criminally negligent conduct.
Fundamental to this appeal is defendant's contention that plain error occurred when the trial judge granted the State's motion for a joint trial of the charges of murder and possession of a weapon by a convicted felon.[1] That such a joint trial *60 was error is clear. State v. Middleton, 143 N.J. Super. 18 (App. Div. 1976), aff'd o.b. 75 N.J. 47 (1977), decided after trial of this case, so holds. Our concern then is merely with the determination as to whether or not this error was of such magnitude as to constitute plain error.
Resolution of this issue is a matter not free from difficulty. On the one hand, one could conclude, with some justification, that jury knowledge of defendant's prior record, in this case possession of marijuana and two convictions for breaking and entry, played no role in the jury's choice between involuntary manslaughter and homicide by misadventure because both options lack the element of intentional conduct. Knowledge of prior convictions, interdicted as the basis of an inference of criminal predisposition, would logically have little influence in the choice between unintentional acts.
We need not, however, decide whether jury knowledge of defendant's prior convictions by itself constituted plain error because the record discloses that the jury was actually invited to consider defendant's status as a "convicted felon" in determining the credibility of his statement to the police despite his election not to testify at trial and as bearing on his guilt or innocence of the murder charge. Our review of the State's summation discloses three instances in which the prosecutor unprofessionally and inexcusably referred to defendant's prior convictions which had been admitted solely with respect to the weapons charge, in order to support defendant's guilt of murder.
The prosecutor used defendant's prior criminal record to portray defendant as a man with a propensity toward crime and hence dangerous:
Now, Meredith Foden got on the witness box, and believe me she was scared when the police first talked to her, wasn't she? She was scared to death. And she was afraid of being arrested and she said *61 she was afraid of Mr. Williams, and from what you have heard in this case, wouldn't you ladies and gentlemen be afraid of Mr. Williams? A man who has a reputation for brandishing a loaded gun at all times, who fires them indiscriminately, who has been convicted of crime. [Emphasis supplied]
See State v. Eason, 138 N.J. Super. 249, 256-259 (App. Div. 1975). At another point in the prosecutor's summation concerning the murder charge, the following occurred:
Now, are you going to believe someone [defendant] that goes out and buys an illegal gun, when he is a convicted felon, for $100 and gives someone a bad check to boot? Are you going to believe any of his testimony? [Emphasis supplied]
This excerpt must be read with the understanding that defendant elected not to testify at the trial and that the assault on defendant's credibility, based partially on his status as a "conviced felon", was made with respect to a statement he gave the police.
Again, in commenting on another witness' testimony, the prosecutor made the same reference:
Now, you can take the photographs in and you will see where [defendant] fired the gun, another incident of this shooting. And bear in mind that this was a man previously convicted of crime, that had no legal reason to carry a gun, * * *.
Each of the foregoing references to defendant's prior conviction record was made without objection from defense counsel or intervention from the trial judge. Hence, from this summation, the jury would have no reason not to believe that they could and should consider defendant's record in connection with a determination of the credibility of his statement to the police (wherein he asserted that the homicide was accidental) and in connection with defendant's guilt of the crime charged.
Nor were they disabused of this notion by any portion of the judge's instructions. Not only did the judge fail to instruct the jury to ignore the evidence of defendant's prior *62 convictions in their consideration of the murder charge, see Evid. R. 6, but he gave them an instruction that, although literally accurate, may well have been understood as confirming the prosecutor's suggestion that such evidence could be considered in determining defendant's credibility in their evaluation of the statement asserting that the homicide was accidental.
Now, in addition, along those lines while we are talking about credibility of witnesses, I instructed you at that time, when there was discussion concerning a criminal record of a particular witness. It's the law in this State that [sic] may be brought out. It's furthermore the law in this State that you may ignore it or you may take it into account in assessing the believability of the person who testified when it's brought to your attention that they have in the past been convicted of a crime.
Reference here was being made to two of the testifying witnesses whose prior convictions had been made known to the jury. With respect to them, the charge was accurate. Nonetheless, the charge was clearly susceptible of misuse because the judge failed to alert the jury that defendant's prior record could not be considered with respect to his credibility on either charge because he chose not to testify and his statement to the police, proffered in evidence by the State, cannot be considered his testimony. In light of the prosecutor's several references to defendant's criminal record, unobjected to, the jury could have and probably did consider this record with respect to both the credibility of defendant's assertion of accident in his statement and the general issue of his guilt.
In our view, the conduct of the prosecutor in seizing on the fortuity of the joint trial of the possession charge with the murder charge that resulted in jury knowledge of defendant's criminal record, and using that evidence in a manner clearly violative of established law in this State, is simply inexcusable. The fact that defense counsel failed to object and the trial judge failed to intervene does not, in this context at least, mitigate the effects of the violation but rather compounds *63 it; the jury was actually invited to a misuse of this evidence of which it only gained knowledge through an erroneous joinder and had no way of knowing of the impropriety of the invited use. Given the erroneous joinder, the prosecutor and judge should have been scrupulous in their care to insure that the criminal record evidence admitted with respect to the weapons count not be used in connection with the murder count where defendant elected not to testify.
More than the normally anticipated effect of a joint trial of the charge of a convicted felon's possession of a gun with another charge (disclosure of a defendant's prior conviction) occurred in this case. The gross overreaching of the prosecutor with the absence of any corrective action by the trial judge, in our view, escalated the error resulting from the joinder to the level of plain error. We cannot escape the conclusion that jury knowledge and probable use of defendant's prior conviction played an influential role in their decision, which appeared by their question to the court during deliberation to have been a difficult choice between manslaughter and homicide by misadventure. The misjoinder, therefore, had the clear capacity to produce an unjust result and a new trial of the manslaughter charge is therefore required. State v. Miscavage, 62 N.J. 294, 301 (1973); State v. Macon, 57 N.J. 325, 340-341 (1971).
Defendant's conviction of possession of a weapon under N.J.S.A. 2A:151-8 is, however, affirmed. That being so, we must consider his contention that he was improperly sentenced, under his guilty plea to the habitual offender accusation, as a third, rather than a second, offender. We agree with this contention. The State concedes the trial judge's error in regarding a plea of guilty to an offense entered after pleas to four other offenses as being a separate conviction for determining defendant's status as an habitual offender. Having been sentenced on one date for all five offenses, all are to be regarded as one conviction for this purpose. N.J.S.A. 2A:85-8, N.J.S.A. 2A:85-9. See also State v. McCall, 14 N.J. 538, 548-549 (1954).
*64 Hence, the sentence imposed by virtue of the Habitual Offender Act is vacated. While the fact that the two offenses, possession of a weapon under N.J.S.A. 2A:151-8 and the two offenses, possession of a weapon under N.J.S.A. 2A:151-8 and the new trial for manslaughter, will have been tried separately does not render any possible conviction for manslaughter a third conviction (see State v. McCall, supra), the outcome of that trial may well affect the judge's view of what the appropriate sentence should be.
In summary, the conviction for possession of a weapon (N.J.S.A. 2A:151-8) is affirmed. Defendant's conviction of manslaughter is reversed and that matter is remanded to the trial court for a new trial thereon. The sentence under the Habitual Offender Act is vacated and that matter, too, is remanded for resentencing after disposition on the manslaughter charge.
NOTES
[1] Defendant's claims of error, not dealt with in this opinion are:

1. The trial court erred in permitting testimony concerning defendant's prior involvement with firearms.
2. Prosecutorial misconduct deprived defendant of a fair trial.
3. Inadequacy of defense counsel deprived defendant of a fair trial.