797 A.2d 153

STATE OF NEW JERSEY, PLAINTIFF, v. SYLVESTER LIVINGSTON, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DERRICK GRIMSLEY, DEFENDANT–RESPONDENT.

Argued February 13, 2002—Decided May 23, 2002.

*Dorothy A. Hersh,* Assistant Prosecutor, argued the cause for appellant (*Daniel G. Giaquinto,* Mercer County Prosecutor, attorney; *Ms. Hersh and Kimberly M. Lacken,* Assistant Prosecutor, of counsel and on the brief).

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for respondent (*Peter A. Garcia,* Acting Public Defender, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal raises novel questions concerning the application of the Persistent Offenders Accountability Act, also known as the "Three Strikes" law, *N.J.S.A.* 2C:43–7.1a. That statute mandates a sentence of life imprisonment for a third-time criminal offender "who has on two or more prior and separate occasions been convicted" of certain enumerated first- and second-degree offenses. The specific issue raised is whether the statute may be applied to a third-time offender who previously entered two separate guilty pleas for two separate crimes at one plea proceeding and was sentenced for those separate crimes in one sentencing proceeding. To answer that question, we must decide whether those contemporaneous convictions were imposed "on two or more prior and separate occasions" as required by the "Three Strikes" law.

The Appellate Division in a published opinion concluded that defendant could not be sentenced to life imprisonment under the "Three Strikes" law because his two prior convictions were imposed in one proceeding and not "on two or more prior and separate occasions." *State v. Livingston,* 340 *N.J.Super.* 133, 140, 773 *A.*2d 1195 (2001). The court reasoned that the statute focuses on separate convictions, not separate crimes, and was not applica-

ble because defendant's convictions "occurred in a single continuous proceeding." *Id.* at 144, 773 *A.*2d 1195. We agree and hold that a person is not eligible for sentencing under the "Three Strikes" law unless the predicate convictions have been imposed in two or more separate and distinct proceedings held on different dates, rather than one single continuous proceeding.

I.

In the early morning hours of August 8, 1995, Rodney Jenkins, a medical security officer at Trenton Psychiatric Hospital, left a bar and dropped off a co-worker at home in Trenton. Jenkins was a member of the hospital's security officers' basketball team and had gone out with his teammates after a game. While driving his girlfriend's van Jenkins pulled into the parking lot of a closed Sunoco service station on Prospect Street in Trenton. As he used a coin-operated telephone in the Sunoco station, Marcus Payton drove past the station with defendants Sylvester Livingston in the front seat and Derrick Grimsley in the back seat. As Jenkins talked on the phone, Payton circled the area and eventually stopped his vehicle around the corner purportedly to relieve himself. Payton testified that he observed Livingston and Grimsley pull a black revolver from a knapsack and walk around the corner toward the Sunoco station. Payton heard three gunshots and then saw Grimsley drive away in the van that Jenkins had been driving, with Livingston in the passenger seat. All three individuals left Jenkins lying on the ground as they departed the area.

Of the three gunshots heard by Payton, the first missed Jenkins but the two others struck him in the back as he tried to run from his attackers. One bullet pierced his shoulder and the other struck him in the center of his back, seriously wounding him. John Christie, one of Jenkins's coworkers, drove by the Sunoco station seconds after the shooting and saw Jenkins lying on the ground. Christie transported Jenkins to Mercer County Hospital with the aid of Clark Wiley, a nearby neighbor. Jenkins was

critically wounded and eventually lost the use of both of his legs, his left arm and shoulder as a result of the shooting.

Livingston and Grimsley were indicted for first-degree carjacking, in violation of *N.J.S.A.* 2C:15–2; first-degree robbery, in violation of *N.J.S.A.* 2C:15–1; third-degree theft, in violation of *N.J.S.A.* 2C:20–3a; fourth-degree unlawful taking of a motor vehicle, in violation of *N.J.S.A.* 2C:20–10b; first-degree attempted murder, in violation of *N.J.S.A.* 2C:11–3 and 2C:5–1; second-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(1); fourth-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(4); second-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4a; and third-degree unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5b. A jury found Livingston and Grimsley guilty on all counts. Although Livingston's conviction was affirmed on appeal below, he is not involved in this appeal. This appeal relates solely to Grimsley's sentencing.

In advance of Grimsley's sentencing hearing, the State served notice of its intention to seek an extended term of imprisonment based on three different theories of repeat offender status: (1) as a Graves Act offender under *N.J.S.A.* 2C:43–6c; (2) as a persistent offender under *N.J.S.A.* 2C:44–3a; or (3) as a repeat violent offender under the "Three Strikes" law, *N.J.S.A.* 2C:43–7.1a. The State's motion relied on Grimsley's two prior convictions for two separate first-degree robberies. The first robbery occurred in Essex County on December 1, 1983 and the second occurred in Union County on May 10, 1985. The two robbery indictments were consolidated for plea disposition in Union County at which time defendant entered separate guilty pleas within minutes of each other on October 24, 1985. On December 3, 1985, the Superior Court in Union County entered separate judgments of conviction and sentenced Grimsley to concurrent twelve-year terms of imprisonment with four years of parole ineligibility on each robbery. Those judgments were entered approximately nine-and-one-half years before the "Three Strikes" law became effec-

tive. Nonetheless, at the sentencing hearing conducted on the present indictment in April 1999, the State argued that Grimsley's convictions for the two prior robberies committed on two distinct occasions constituted two predicate strikes under the "Three Strikes" law, notwithstanding the fact that both convictions were entered contemporaneously. Defense counsel, on the other hand, argued that the two convictions were not separate because they were imposed on one occasion.

The trial court concluded that, although Grimsley's prior robberies occurred on different dates and were charged in two separate indictments, he was not eligible for an extended term under the "Three Strikes" law because "the statute expressly requires that the defendant be convicted on two separate occasions." Because Grimsley's two robbery convictions were imposed on the same day, he "was essentially convicted on one occasion" and his prior convictions counted as only one predicate "strike," not two. The court, accordingly, sentenced Grimsley to two concurrent extended terms of life imprisonment under the Graves Act with a parole ineligibility period of twenty-five years on the carjacking and attempted murder convictions. The court also imposed a consecutive ten-year sentence with a parole ineligibility term of five years for the weapons conviction.

Grimsley appealed the life sentence for carjacking, and the State cross-appealed the trial court's failure to sentence Grimsley under the "Three Strikes" law. The Appellate Division rejected the State's argument that Grimsley's prior robbery convictions constituted convictions "on two or more prior and separate occasions" under the "Three Strikes" law. *State v. Livingston, supra,* 340 *N.J.Super.* at 140–41, 773 *A.*2d 1195. The court reasoned that the language of the statute could not "reasonably be interpreted to subject Grimsley to its terms." *Id.* at 141, 773 *A.*2d 1195. The court had "no doubt that Grimsley's two robbery convictions were imposed in actual or *de facto* consolidated cases, without separation, and not on 'two or more prior and separate occasions.'" *Id.* at 147, 773 *A.*2d 1195. On Grimsley's appeal, the court vacated

the life sentence for carjacking based on the State's concession that carjacking was not öne of the enumerated offenses for which a Graves Act extended term could be imposed. *Id.* at 140, 773 *A.*2d 1195.

Petitions for certification filed by Livingston and Grimsley were denied. 170 *N.J.* 206, 785 *A.*2d 435 (2001). We granted the State's cross-petition for certification, limited to the issue whether Grimsley's prior convictions qualified him for sentencing under the "Three Strikes" law. 170 *N.J.* 206, 785 *A.*2d 435 (2001). We now affirm.

## II.

The State argues that the Legislature intended the courts to use qualifying convictions that represent separate and distinct acts of crime as the basis for enhanced punishment and not to prohibit the use of multiple convictions entered at the same time. The State maintains that "[t]he overriding purpose of the 'Three Strikes' law was to protect the public from persons who persistently commit serious and violent crimes" by imposing the most severe custodial sentence available under the law. The State contends that the Appellate Division's reasoning will defeat the legislative intent if multiple convictions for separate offenses imposed in one sentencing proceeding are considered as only one conviction for purposes of the statute. The State insists that if the Legislature had intended the result reached by the Appellate Division, it would have expressed its intention with different language, perhaps similar to that used in the former Habitual Offender Act, *N.J.S.A.* 2A:85–12, repealed in 1978 by *N.J.S.A.* 2C:98–2.

Defendant argues that the plain meaning of the statute is clear and that the Legislature intended to address multiple prior convictions rather than multiple prior crimes. Defendant contends that the legislative history and our former Habitual Offender Act support the concept that convictions "on two or more prior and separate occasions" do not include convictions imposed on one day

in one sentencing proceeding. Rather, the phrase includes those convictions in which an individual has been sentenced on two separate dates.

█ The pertinent provisions of the "Three Strikes" law provide:

a. Life Imprisonment Without Parole. A person convicted of a crime under any of the following ... *who has on two or more prior and separate occasions been convicted of a crime* under any of the foregoing sections or under any similar statute of the United States, this state, or any other state for a crime that is substantially equivalent to a crime under any of the foregoing sections, shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole.

. . . .

c. The provisions of this section shall not apply unless the *prior convictions are for crimes committed on separate occasions* and unless the crime for which the defendant is being sentenced was committed either within 10 years of the date of the defendant's last release from confinement for commission of any crime or within 10 years of the date of the commission of the most recent of the crimes for which the defendant has a prior conviction.

[*N.J.S.A.* 2C:43–7.1a, c.]

Because Grimsley was convicted of first-degree attempted murder and first-degree robbery, two crimes enumerated in the "Three Strikes" law, and he had been convicted previously of two first-degree robberies, the State sought to have him sentenced to life imprisonment without parole pursuant to *N.J.S.A.* 2C:43–7.1a. Pertinent to this case, the "Three Strikes" law mandates life imprisonment without parole for a person who has been convicted of first-degree robbery on three "separate occasions." It is undisputed that Grimsley has been convicted of the first-degree attempted murder and robbery of Rodney Jenkins in the present case and two other robberies on at least one prior and separate occasion. The dispute, however, focuses on whether the December 3, 1985 judgments of conviction were entered on two "prior and separate occasions." Although we upheld the constitutionality of the "Three Strikes" law in *State v. Oliver,* 162 *N.J.* 580, 585–89, 745 *A.*2d 1165 (2000), we have not addressed the novel issue presented by this appeal.

█ " 'As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and

unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent.' " *State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001) (quoting *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982)). If the text is susceptible to different interpretations, we look beyond the literal words of the statute and consider " 'extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the [L]egislature's intent.' " *Aponte–Correa v. Allstate Ins. Co.,* 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000) (quoting *Township of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999)). We also consider the policy underlying the statute. *State v. Thomas, supra,* 166 *N.J.* at 567, 767 *A.*2d 459. However, in criminal cases we are guided by the rule of lenity, which requires us to construe penal statutes strictly and interpret ambiguous language in favor of a criminal defendant. *Schad, supra,* 160 *N.J.* at 171, 733 *A.*2d 1159; *State v. Galloway,* 133 *N.J.* 631, 658–59, 628 *A.*2d 735 (1993); *State v. Valentin,* 105 *N.J.* 14, 18, 519 *A.*2d 322 (1987); *State v. Carbone,* 38 *N.J.* 19, 23–24, 183 *A.*2d 1 (1962).

The "Three Strikes" law does not define "separate occasions." The Appellate Division concluded that the language of the "Three Strikes" law, "on two or more prior and separate occasions," is clear and unambiguous. *State v. Livingston, supra,* 340 *N.J.Super.* at 141, 773 *A.*2d 1195. We disagree and find that the statute is not clear concerning whether two convictions imposed in one proceeding qualify as one strike or two strikes under the "Three Strikes" law.

When the "Three Strikes" law was enacted in 1995, it was part of a nationwide trend aimed at protecting the public by incarcerating certain third-time offenders for life. *State v. Oliver, supra,* 162 *N.J.* at 583–84, 745 *A.*2d 1165. "The statute was a response to a genuine legislative concern that repeat offenders pose a unique danger to society such that society could not be protected without the provisions of this Act." *Id.* at 589, 745 *A.*2d 1165. Before the statute was passed, then-Governor Christine Todd Whitman re-

turned the proposed legislation to the Senate with her recommendations as part of a conditional veto. Letter from Christine Todd Whitman, Governor, to the New Jersey Senate (May 8, 1995). Her letter affirmed the goal of the pending legislation and stated that the purpose of the new law was "to protect the public from persons who persistently commit serious and violent crimes" by sentencing those who are "*convicted* on a third or subsequent occasion ... to a term of life imprisonment with no eligibility for parole." *Id.* at 1 (emphasis added).

When the law was passed, a press release from the Governor's office again stated that the "Three Strikes" law mandated a life sentence without parole for persons "who are *convicted* of first degree crimes on three separate occasions." Office of the Governor, *News Release* 1 (June 22, 1995) (emphasis added). In upholding the statute's constitutionality, this Court stated that the law "mandates a life sentence without parole for any person *convicted on three separate occasions* of certain violent crimes." *State v. Oliver, supra,* 162 *N.J.* at 583, 745 *A.*2d 1165 (emphasis added).

The New Jersey Code of Criminal Justice (Code) contains other sentence enhancement provisions that are useful in determining whether the phrase "prior and separate occasions" means that each prior conviction for an enumerated crime must occur on different days. In *State v. Hawks,* 114 *N.J.* 359, 365, 554 *A.*2d 1330 (1989), the Court held that the extended term provisions of the Graves Act, *N.J.S.A.* 2C:43–6c and *N.J.S.A.* 2C:44–3d, were triggered for a second-time offender regardless of the chronological sequence of convictions so long as there is a prior conviction at the time the extended term is imposed. But unlike the issue raised in the recent Appellate Division decision in *State v. Galiano,* 349 *N.J.Super.* 157, 793 *A.*2d 96 (2002), the issue in the present case is not the chronological sequence of the two prior convictions, but rather whether the two convictions count as one or two strikes under the "Three Strikes" law.

Another example is the persistent offender criteria, *N.J.S.A.* 2C:44–3a, for imposing extended terms of imprisonment. The

definition of a persistent offender contains language almost identical to that contained in the "Three Strikes" law. It requires the defendant to have "been previously convicted on at least two separate occasions of two crimes, committed at different times." *Ibid.* The Appellate Division has held that any two judgments of conviction entered prior to the pending sentencing satisfy the criteria regardless of whether those two crimes preceded or followed the date of the crime for which the extended term was sought. *State v. Mangrella,* 214 *N.J.Super.* 437, 445, 519 *A.*2d 926 (App.Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987). In this context as well, the issue whether the two prior convictions required to meet the persistent offender requirement can be satisfied with simultaneous convictions has not been addressed.

Finally, we examine the repeat sex offender statute, *N.J.S.A.* 2C:14–6. It provides:

> If a person is *convicted of a second or subsequent offense* ... the sentence imposed ... shall ... include a fixed minimum sentence of not less than 5 years during which the defendant shall not be eligible for parole.... For the purpose of this section an offense is considered a second or subsequent offense, if the actor has *at any time been convicted* [of a sex offense therein defined.]
>
> [*Ibid.* (emphasis added).]

*State v. Anderson,* 186 *N.J.Super.* 174, 176–77, 451 *A.*2d 1326 (App.Div.1982), *aff'd o.b.,* 93 *N.J.* 14, 459 *A.*2d 302 (1983), held that under the definition of "second or subsequent offense," simultaneous convictions do not satisfy the statutory requirement. The court held that "in order for one to be a second or a subsequent offender, there must have been a first or earlier conviction already entered at the time the second or subsequent offense was committed." *Id.* at 176, 451 *A.*2d 1326. To guard against overextending the holding in *Anderson,* this Court observed in *State v. Hawks* that "[t]he plain language of the Graves Act provisions does not limit, either expressly or impliedly, the chronological sequence of convictions subject to its extended term provisions; the only requirement is that there be a prior conviction." *Supra,* 114 *N.J.* at 365, 554 *A.*2d 1330.

The most compelling comparison to the "Three Strikes" law is our former Habitual Offender Act, *N.J.S.A.* 2A:85–12, which was repealed in 1979 when the Code became effective. It provided:

Any person convicted on 3 separate occasions of high misdemeanors in this state, or of crimes under the laws of the United States or any other state or country, which crimes would be high misdemeanors under the laws of this state, or whose convictions for such offenses in this state or under the laws of the United States or any other state or country shall total 3 or more, and who thereafter is convicted of an offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the state prison upon the person so convicted.

*Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction.*

[*Ibid.* (emphasis added).]

The Habitual Offender Act was similar in substance and effect to the current "Three Strikes" law, although mandatory life imprisonment was triggered upon a person's fourth conviction, rather than his or her third conviction as is the case with the "Three Strikes" law. Further, unlike the "Three Strikes" law, the Habitual Offender Act clearly stated that multiple charges in one indictment, or multiple indictments consolidated for trial, could count against a defendant only as one conviction for sentencing purposes. *Ibid.*

Several cases discussing the Habitual Offender Act shed light on the meaning of convictions on "prior and separate occasions" in the Three Strikes law. In *State v. McCall,* 14 *N.J.* 538, 541, 103 *A.*2d 376 (1954), the Court considered whether a defendant could be sentenced under the Habitual Offender Act. Specifically, the Court noted that the defendant had been convicted on two earlier occasions of several offenses that were tried together, for which separate sentences were imposed and made to run concurrently. *Id.* at 548, 103 *A.*2d 376. The Court held that "[e]ach *group* of convictions ... constituted *one 'conviction' on a separate 'occasion'* under *N.J.S.A.* 2A:85–12." *Ibid.* (emphasis added). *See also State v. Williams,* 167 *N.J.Super.* 57, 63, 400 *A.*2d 513 (App.Div. 1979) (holding that five earlier convictions sentenced on the same day count as one conviction for sentencing under the Habitual

Offender Act); *accord State v. Rowe*, 140 *N.J.Super.* 5, 8–9, 354 *A.2d* 701 (App.Div.1976), *aff'd o.b.*, 81 *N.J.* 296, 406 *A.2d* 169 (1978). The persistent offender statute, *N.J.S.A.* 2C:44–3a, replaces the former Habitual Offender Act. 1 *Final Report of the New Jersey Criminal Law Revision Commission* 154–55 (1971) (Final Report). The drafters of the persistent offender criteria were aware that the Habitual Offender Act deemed multiple charges in a single indictment, or multiple indictments or accusations consolidated for trial, to implicate only one conviction. 2 *Final Report*, commentary to § 2C:44–3, at 330.

Our comparative analysis of the various sentence enhancement statutes leads us to conclude that, unlike the sex offender statute, *N.J.S.A.* 2C:14–6, which is designed to encourage rehabilitation, the "Three Strikes" law is intended to deter violent crime in a manner similar to the Graves Act, *N.J.S.A.* 2C:43–6c, and the persistent offender statute, *N.J.S.A.* 2C:44–3a. Although the Legislature did not define clearly whether multiple convictions entered simultaneously constitute one or more strikes under *N.J.S.A.* 2C:43–7.1a, we are nonetheless persuaded that such convictions constitute only one strike.

"[W]hen the Legislature uses words in a statute that previously have been the subject of judicial construction, the Legislature [is] deemed to have used those words in the sense that has been ascribed to them." *State v. Thomas, supra,* 166 *N.J.* at 567–68, 767 *A.2d* 459. Our courts almost uniformly have used the phrase "separate occasions" to mean "at different times" as opposed to being simultaneous. *E.g., State v. Pennington,* 154 *N.J.* 344, 350, 712 *A.2d* 1133 (1998) (stating that defendant had two prior convictions for offenses committed on two separate occasions for purposes of sentencing him as a persistent offender); *State v. Brimage,* 153 *N.J.* 1, 7, 706 *A.2d* 1096 (1998) (stating that defendant had been adjudicated delinquent on three separate occasions); *State v. Sosinski,* 331 *N.J.Super.* 11, 15–16, 750 *A.2d* 779 (App.Div.) (outlining three incidents of criminal conduct that occurred on separate occasions), *certif. denied,* 165 *N.J.* 603, 762

A.2d 217 (2000); *State v. Cook,* 330 *N.J.Super.* 395, 423, 750 *A.*2d 91 (App.Div.) (discussing defendant's criminal history that included murdering four people on four separate occasions), *certif. denied,* 165 *N.J.* 486, 758 *A.*2d 646 (2000); *see also State v. Rhodes,* 329 *N.J.Super.* 536, 544 & n. 2, 748 *A.*2d 625 (App.Div.) (noting that "Three Strikes" law focuses on prior convictions rather than charges initially contained in indictment), *certif. denied,* 165 *N.J.* 487, 758 *A.*2d 647 (2000).

Furthermore, because of the substantial penal consequences that flow from a sentence of life imprisonment without any possibility of parole, the requirement that the two prior convictions occur on "separate occasions" suggests that the Legislature did not intend to make each conviction count as a strike when entered simultaneously. When the "Three Strikes" law was enacted in 1995, a common practice had existed at least since 1975, when *Rule* 3:25A–1 was promulgated, that encouraged the assembling of pending charges against a defendant for disposition at a single plea hearing. See *State v. Pillot,* 115 *N.J.* 558, 568–74, 560 *A.*2d 634 (1989). That history supports our conclusion that when a number of charges contained in single or multiple indictments or accusations are packaged for plea disposition or consolidated for trial, the Legislature contemplated that multiple simultaneous convictions entered under those circumstances count as a single strike under *N.J.S.A.* 2C:43–7.1a. That holding accords with our understanding that "separate occasions" means "at different times," and is consonant with the rule of strict construction of penal statutes. Also, two judgments of conviction entered simultaneously cannot literally be characterized as having been entered on "two or more prior and separate occasions." To be separate, each conviction must be entered by a court in a separate court session on different days.

### III.

The State also argues that the trial court and the Appellate Division's decision to construe defendant's two earlier convictions

as merely one strike denies certain defendants equal protection of law. The State maintains that similarly situated defendants will be treated differently based solely on their attorneys' ability to "package" plea agreements.

The Fourteenth Amendment of the United States Constitution and Article I, paragraph 1 of the New Jersey Constitution guarantee equal protection of the laws. *Right to Choose v. Byrne,* 91 *N.J.* 287, 304–05, 450 *A.*2d 925 (1982). A statute that neither "treat[s] a 'suspect' or 'semi-suspect' class disparately nor affect[s] a fundamental right ... is subject to a 'rational basis' analysis." *State v. Lagares,* 127 *N.J.* 20, 34, 601 *A.*2d 698 (1992); *Dandridge v. Williams,* 397 *U.S.* 471, 485, 90 *S.Ct.* 1153, 1161, 25 *L.Ed.*2d 491 (1970). Under the rational basis analysis, the governmental action must be rationally related to the achievement of a legitimate state interest. *Right to Choose, supra,* 91 *N.J.* at 305, 450 *A.*2d 925.

In *State v. Lagares, supra,* this Court applied the rational basis test to the Comprehensive Drug Reform Act and noted that the rational relationship test applies where the Legislature has created classifications of offenders for sentencing purposes. The Court found that "the Legislature may provide different punishments for offenders convicted of the same crimes so long as there is some rational connection between the classification of offenders and a proper legislative purpose." 127 *N.J.* at 34, 601 *A.*2d 698. The Court concluded that the enhanced sentencing provision of the Comprehensive Drug Reform Act did not violate equal protection rights because it was "rationally related to the legitimate governmental interest of battling crime by punishing recidivists more severely." *Id.* at 35, 601 *A.*2d 698.

The "Three Strikes" law withstands similar scrutiny. The Legislature's purpose in enacting the "Three Strikes" law was to protect the public by punishing those who repeatedly commit the most serious offenses under our Code, a legitimate state interest. *Id.* at 34–35, 601 *A.*2d 698 (recognizing that legitimate objectives "recognize degrees of harm or possible harm"). Punishing certain

offenders more severely for the same crime is rationally related to that goal. Also, a defendant will have sufficient notice that he or she is subject to sentencing under the Three Strikes law because a court may impose the sentence only on the State's motion and after a defendant is given notice and an opportunity to be heard. *N.J.S.A.* 2C:43–7.1d. Thus, a mandatory life sentence for individuals who commit the first- and second-degree offenses enumerated in the "Three Strikes" law does not violate equal protection rights and is rationally related to the legitimate governmental interest of protecting the public from violent offenders.

Moreover, concerns about "strange results" that indicate that prosecutorial discretion has gone awry could be adequately addressed through guidelines to prosecutors, to aid them in the manner in which they structure and schedule the entry of guilty pleas. But we have not been presented with any indication that guidelines are needed now. We are unaware of any abuse occurring based on our permissive joinder practice, *R.* 3:15–1(a), or our consolidation practice, *R.* 3:25A–1. Should guidelines become necessary, we will consider asking the Attorney General to draft guidelines to aid prosecutors in the use of their discretion as we have in the past. See *e.g., State v. Brimage, supra,* 153 *N.J.* at 23, 706 *A.*2d 1096 (holding that plea agreement guidelines for *N.J.S.A.* 2C:35–12 must be consistent throughout the State); *State v. Lagares, supra,* 127 *N.J.* at 32, 601 *A.*2d 698 (requiring adoption of guidelines among county prosecutors to assist their determination of when extended sentence requirement for repeat drug offenders under *N.J.S.A.* 2C:43–6f applies). Presently, we find no need for guidelines.

### IV.

The judgment of the Appellate Division is affirmed.

STEIN, J., concurring.

I join in the Court's disposition of the "three strikes" issue. I disagree with the Court's conclusion that its holding reflects the

intent of the Legislature. *Ante* at 224. I have little doubt that the Legislature will be surprised to learn that a defendant convicted on the same day on two indictments for robberies committed on separate occasions is ineligible for sentencing under the "Three Strikes" law on the occasion of his third conviction, but that he would have been eligible for such sentencing if his first two convictions had occurred on successive days.

Nevertheless, I concur in the Court's holding because the statutory language is clear and unambiguous in requiring that the two prior convictions occurred on "two or more *prior and separate occasions.*" *N.J.S.A.* 2C:43–7(a) (emphasis added). Although I seriously doubt that the Legislature contemplated the result we reach, our precedents clearly require that we strictly construe criminal statutes. *See State v. Galloway,* 133 *N.J.* 631, 658–59, 628 *A.*2d 735 (1993); *State v. Valentin,* 105 *N.J.* 14, 17, 519 *A.*2d 322 (1987).

Despite my belief that the Court's application of the statute is inconsistent with the legislative will, the Court's conclusion is plausible not only because of the literal language of the "Three Strikes" law, but also because the uniform construction of the former Habitual Offender Act supports the Court's result. As the Court explains, the analogous provision of former Title 2A, the "Habitual Offender" Act, *N.J.S.A.* 2A:85–12, repealed September 1, 1979, was amended in 1951 to provide:

> Conviction of two or more of such crimes or high misdemeanors charged in one indictment or accusation, or in two or more indictments or accusations consolidated for trial, shall be deemed to be only one conviction.
>
> [*L.* 1951, c. 344.]

Decisions construing the 1951 amendment to the Habitual Offender Act, see *State v. McCall,* 14 *N.J.* 538, 548, 103 *A.*2d 376 (1954); *State v. Williams,* 167 *N.J.Super.* 57, 63, 400 *A.*2d 513 (App.Div.1979); *State v. Rowe,* 140 *N.J.Super.* 5, 8–9, 354 *A.*2d 701 (App.Div.1976), as well as decisions construing the 1940 amendment, *L.* 1940, c. 219, that referred simply to "[a]ny person who on three separate occasions has been convicted ...," see *State v. Culver,* 30 *N.J.Super.* 561, 567, 105 *A.*2d 429 (App.Div.1954),

treated convictions entered on the same date as only one conviction for purposes of eligibility for habitual offender status.

It should be noted that defendant's two prior 1985 robbery convictions in Union County were authorized by Rule 3:25A–1, pursuant to which indictments pending against one defendant in two counties may be consolidated "for purposes of entering a plea or for sentencing." That form of consolidation differs from the requirement in the 1951 amendment to the Habitual Offender Act providing that "convictions of two or more ... crimes ... charged in two or more indictments ... *consolidated for trial* shall be deemed to be only one conviction." (emphasis added). Nevertheless, in *McCall, supra,* the Court observed that the phrase "consolidated for trial" should not be given a "literal technical meaning" but rather should be "liberally construed to serve the general legislative policy." 14 *N.J.* at 548, 103 *A.*2d 376. Because in *McCall* defendant on two occasions entered guilty (or *non vult*) pleas to multiple allegations in separate indictments, the Court's observation suggests that, at least for purposes of the Habitual Offender Act, charges in multiple indictments consolidated for purposes of a guilty plea on the same day constituted only one conviction.

The Court's construction of the statute produces the inexplicable result that pleas on successive days to two charges subject to the Three Strikes law result in eligibility for Three Strikes sentencing but pleas on the same day to such charges do not. In my view, although anomalous, that construction is consistent with both the statutory language and with the longstanding interpretation of the comparable provision in the Habitual Offender Act. If the Legislature prefers a different result, it should amend the statute.

LONG, J., concurring in part and dissenting in part.

I am in full agreement with the majority's conclusion that Derrick Grimsley is not subject to sentencing under the "Three Strikes" law because he was not previously convicted "on two or

more prior and separate occasions." My difference from my colleagues arises out of their conclusion that so long as a defendant's convictions are separated by a day, the "Three Strikes" law is triggered. Why would the Legislature have enacted such a law? If its intention was merely to imprison for life persons who committed three crimes, it could easily have said so. Instead, it imposed the clear requirement that the predicate convictions occur on "separate occasions."

My colleagues interpret that language literally—with the result that the statute makes no sense at all. It is plainly irrational that one defendant could be sentenced to life in prison because his previous convictions were entered on consecutive days and yet another, who committed the exact same crimes of the exact same magnitude, could escape such a sentence merely because those convictions occurred on the same day, a few hours apart. I would not attribute such irrationality to the Legislature. *Things Remembered, Inc. v. Petrarca,* 516 *U.S.* 124, 135, 116 *S.Ct.* 494, 500, 133 *L.Ed.*2d 461, 470–71 (1995) (Ginsburg, J., concurring) ("It would show little respect for the legislature were courts to suppose that the lawmakers meant to enact an irrational scheme").

The purpose of "Three Strikes" is to "mak[e] sure that those who pose the greatest risk to society[,] . . . a small corps of hardened criminals who commit the bulk of the crimes over and over and over again, . . . are put away for good." Art Weissman, *'3 Strikes and You're In' Becomes Law for Worst Offenders, Asbury Park Press,* June 23, 1995, at A8 (quoting Governor Christine Todd Whitman). Requiring a defendant's previous convictions to occur on consecutive days rather than on the same day does not help to distinguish those who are members of that cadre of "hardened criminals" from those who are not.

To fulfill the statute's purpose of targeting the most incorrigible offenders for life imprisonment, the notion of "separate occasions" must be defined in relation to squandered opportunities for reform. In other words, "separate occasions" means that between each qualifying conviction there should be some chance for reha-

bilitation. That is referred to as "the intervening convictions" approach. It requires a pattern of crime-conviction-crime-conviction-crime-conviction. Derrick D. Crago, *Note, The Problem of Counting to Three Under the Armed Career Criminal Act,* 41 Case W. Res. L Rev. *1179 (1991) (arguing that ACCA be interpreted to require that requisite convictions occur between requisite crimes even though ACCA only refers to "three previous convictions" without even explicit requirement that they be on separate occasions).*[1] *Recidivism after a failed attempt to rehabilitate is the best measure of incorrigibility. By itself, having been convicted on consecutive days instead of a single day has no relevance whatsoever in the incorrigibility analysis.*

Other enlightened courts have recognized that and interpreted statutes with language similar to our "Three Strikes" law to require that qualifying convictions occur after failed opportunities for rehabilitation. For example, the Rhode Island Supreme Court, interpreting a statute that requires a defendant to have been "sentenced on two or more such occasions" held that such individuals are those "who have failed to avail themselves of *multiple opportunities* to reform themselves *following conviction* of criminal offenses." *State v. Smith,* 766 *A.*2d 913, 924 (R.I.2001) (interpreting *R.I. General Laws* § 12–19–21 (1956)) (emphasis added). Likewise, the Court of Appeals of Idaho interpreted the rule that "convictions entered the same day ... should count as a single conviction for purposes of establishing habitual offender status," as allowing "a defendant a chance to rehabilitate himself *between convictions." State v. Harrington,* 133 *Idaho* 563, 990 *P.*2d 144, 146 (Idaho Ct.App.1999) (interpreting *Idaho Code* § 19–2514 (1999)) (emphasis added). Similarly, the Delaware Supreme

---

[1] Congress has since adopted the intervening convictions approach in an amendment to the federal sentencing guidelines that provides for mandatory life imprisonment for those convicted of three or more violent felonies. 18 *U.S.C.A.* § 3559(c)(1)(B) (mandating life imprisonment if "each serious violent felony or serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony or serious drug offense").

Court interpreted a statute targeting persons "three times convicted of a felony" as habitual offenders, as requiring not only that the convictions be successive to each other, but that there be "some chance for rehabilitation *after each sentencing,* before the extreme penalty of life imprisonment be brought to bear." *Buckingham v. State,* 482 *A.*2d 327, 330–31 (Del.1984) (interpreting *Del.Code Ann.* tit. xi, § 4214(b)(1984)) (emphasis added). The Delaware court reasoned that the legislature "intended to reserve the habitual offender penalties for those individuals who were not rehabilitated after the *specified number of separate encounters with the criminal justice system and a corresponding number of chances to reform." Id.* at 330 (emphasis added). We should follow the reasoning of those courts in our interpretation of the Three Strikes Law. Only the intervening convictions approach renders the statutory scheme rational.

*For affirming*—Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—5.

*Concurring in part and dissenting in part*—Justice LONG—1.