891 A.2d 1247 (2006)
383 N.J. Super. 396
STATE of New Jersey, Plaintiff-Appellant,
v.
Randi FLEISCHMAN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 2006.
Decided March 1, 2006.
*1248 Zulima V. Farber, Attorney General, attorney for appellant (Valerie A. Noto, Deputy Attorney General, on the brief).
Miller, Meyerson, Schwartz & Corbo, Jersey City, attorneys for respondent (Leonard Meyerson, on the brief).
Before Judges KESTIN, LEFELT and HOENS.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
The State appeals, on leave granted, from a trial court order dismissing count one of an indictment. That count charged second-degree insurance fraud under N.J.S.A. 2C:21-4.6.[1] The appeal requires *1249 us to determine whether the State has alleged a sufficient number of acts of insurance fraud to elevate the charged crime from third-degree to second-degree.
N.J.S.A. 2C:21-4.4 through -4.7 were newly enacted in L. 2003, c. 89, to become effective on June 9, 2003. These criminal provisions were modeled upon N.J.S.A. 2C:21-4.2 to -4.3, enacted in 1997 to establish second- and third-degree crimes for health care claims fraud. N.J.S.A. 2C:21-4.6b establishes two grades of crime depending upon the number of acts of insurance fraud knowingly committed in order to obtain a benefit of at least $1,000. The commission of five or more such acts is a second degree crime. "Otherwise, insurance fraud is a crime of the third degree." Ibid. That section also provides:
Each act of insurance fraud shall constitute an additional, separate and distinct offense, except that five or more separate acts may be aggregated for the purpose of establishing liability pursuant to this subsection. Multiple acts of insurance fraud which are contained in a single record, bill, claim, application, payment, affidavit, certification or other document shall each constitute an additional, separate and distinct offense for purposes of this subsection.
[Ibid.]
On a motion to dismiss a criminal indictment, the facts upon which the indictment is based must be viewed indulgently in favor of the State. "[E]very reasonable inference is to be given to the State [and] the evidence need not be sufficient to sustain a conviction, but merely sufficient to determine that there is prima facie evidence to establish that a crime has been committed." State v. Graham, 284 N.J.Super. 413, 416-17, 665 A.2d 769 (App. Div.1995), certif. denied, 144 N.J. 378, 676 A.2d 1092 (1996). An indictment should not be dismissed unless it appears clearly and plainly that it is insufficient. See State v. Hogan, 144 N.J. 216, 228-229, 676 A.2d 533 (1996). Nevertheless, an indictment cannot stand unless the State has presented the grand jury "with at least `some evidence' as to each element" of the alleged crime, although the quantum of such evidence "need not be great." State v. Schenkolewski, 301 N.J.Super. 115, 137, 693 A.2d 1173 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 549 (1997); see also State v. Bennett, 194 N.J.Super. 231, 234, 476 A.2d 833 (App.Div.1984), certif. denied, 101 N.J. 224, 501 A.2d 904 (1985).
The State's factual presentation to the grand jury in this matter was through the testimony of an investigator from the office of the Attorney General's Insurance Fraud Prosecutor. Her investigation disclosed that on December 4, 2003, defendant reported to the Menlo Park Mall police substation that her car had been stolen from the mall. The next day, she called her insurance company. Defendant then submitted an affidavit to the insurance company asserting the theft. The investigation revealed that the vehicle had been found burning in Brooklyn, New York on November 27, 2003.
The investigator testified further that, when the insurance company confronted defendant with the information about the discovery in Brooklyn, she withdrew her claim in a writing that was signed and witnessed. According to the investigator, defendant also admitted to a representative of the Fire Marshal in New York that she had been unable to sell the vehicle and "gave it to a friend to get rid of[.]"
Toward the end of the investigator's testimony before the grand jury, the deputy attorney general making the presentation, together with the investigator, summarized the statutorily required five acts defendant *1250 had allegedly committed as follows:
Q. * * * [S]he filed a false report with Edison police?
A. Yes.
Q. She executed a sworn affidavit to Liberty Mutual claiming it was stolen, knowing it wasn't?
A. Yes.
Q. In her statement to Edison Police, she said she arrived at the Mall around 9:00 with a friend; isn't that correct?
A. Yes.
Q. And actually in her statement to Liberty Mutual, she then said she arrived to the Mall alone around 5:30; isn't that correct?
A. Yes.
Q. Okay. And finally, in her statement to Liberty Mutual[,] she said that she did not own any other vehicles when in fact she had purchased the Honda already and her Sebring was not for sale when it really was for sale; isn't that correct?
A. Yes.
Q. Now, the amount of her submitted claim which was denied was $12,932; is that correct?
A. Yes, it is.
Q. And, of course, you confirmed that Liberty Mutual denied it; is that correct?
A. Yes.
In a later summary of the evidence for the grand jury, the deputy attorney general stated:
So, to summarize. She told Liberty Mutual that she went to the Menlo Park Mall and that her car was stolen from the mall, filed a false police report with Edison police. Then a week or so later executed the theft affidavit, again[ ] claiming it was stolen from the mall. And these documents are all for your review. Finally, when confronted with the Fire Marshal's information, she withdrew her claim.
* * * *
And the summary of those acts again are: the false report to the police; the false affidavit; the statement to the police that she came to the Mall with a friend at 9:00; the contradictory statement to Liberty Mutual that she came to the Mall at 5:30[;] and her statement to Liberty Mutual that she, at the time, did not own any other vehicles and her Sebring was not for sale, when in fact it was for sale, and she ... had already purchased a Honda Accord.
So there's your five acts and the aggregate pecuniary benefit obtained or sought to be obtained was at least a thousand dollars. * * *
She knowingly did make or cause to be made false statements. And ... she did attempt to submit a claim and knowingly did commit five or more acts....
In his argument before the trial court on the motion to dismiss count one of the indictment and for other relief, defense counsel stressed that the State had failed to present the grand jury with evidence of five acts of insurance fraud.
I have tried to count the acts and depending on which particular time period I don't get down to five. I get to four and even though one reference is to five, I don't get to five.
* * * *
The fact that she reported and lied to the Edison police, that certainly is an act of fraud and nobody questions it. The fact that she submits a false theft affidavit to Liberty Mutual, that is a fact.... The fact that she makes a statement to Liberty Mutual, that is a fact....

*1251 * * *
[T]he withdrawal of a claim from an insurance company is not an act of fraud.
The deputy attorney general who had presented the matter to the grand jury argued the motion on behalf of the State. She stated that "[t]he actual five acts that are alleged ... [a]re pretty clear in the transcript, and in ... documents that were presented as evidence for [the grand jury]." When Judge DeVesa asked for a clarification, the response began with a reference to the telephone call defendant had made to the insurance company to report her car as stolen. The judge inquired: "if within that claim or ... conversation, they state three or four false statements, are you saying that those are independent acts of insurance fraud?" Counsel responded in the affirmative, stating: "The only guidance the State has with the new insurance fraud statute is the health care claims fraud statute which it's modeled after."
Counsel for the State agreed with the court that the Attorney General's guidelines called for in N.J.S.A. 2C:21-4.7f (see also N.J.S.A. 2C:21-4.3g) might be a helpful analytical tool and would be submitted to the court.[2] She went on to stress that defendant had not only made several false statements in her telephone report to the insurance company, but that she had also made a false report to the Edison police and had filled out and signed the loss claim affidavit. She contended that defendant's withdrawal of the claim after being confronted with the facts disclosed by the investigation was another act of insurance fraud, as was her admission to the Fire Marshal's representative that she had given the car to someone to "get rid of."
In his oral statement of reasons for dismissing count one of the indictment, Judge DeVesa described the deputy attorney general's presentation to the grand jury in that respect as "somewhat confusing." He went on to state:
The attorney general did read the appropriate statute to the grand jury and did explain to a certain extent that ... to elevate a crime of insurance fraud to second degree there must be five separate acts of insurance fraud. I think that ... presentation ... was somewhat flawed in two respects. One, the summary of the five separate acts of insurance fraud or the reference to them actually differs from one place to another. There are some spots in the grand jury transcript where it appears that the attorney general is taking the position that there are separate and distinct acts of filing a police report, filing a claim with Liberty Mutual, filing an affidavit with Liberty Mutual, filing a withdrawal of the claim and presumably ... making some type of an admission to the fire marshall who was ultimately investigating the arson. On the other hand, there are other parts of the grand jury transcript where the attorney general seems to be saying to the grand jury that the acts of insurance fraud also include the specific lies within each of these statements so that the false police report *1252 actually includes two or three acts of insurance fraud because it contains two or three lies.
* * * I think that both of those deficiencies make it impossible for the State to have demonstrated its burden that the grand jury was properly instructed on the law and returned an indictment that established prima facie evidence of each of the elements of second degree insurance fraud.
First of all, I cannot accept the attorney general's view of the definition of a separate act of insurance fraud. As I see the case and my view of this statute is that it was intended to allow for an assertion of separate acts of insurance fraud when perhaps in a case where there are doctors visits that are alleged to have been made maybe you know there are perhaps separate instances of false statements, and in this case we do have separate instances of false statements in that we clearly have a telephone claim to Liberty Mutual. We clearly have a false police report that is filed and we clearly have an affidavit that is submitted to Liberty Mutual, and the Court finds that the grand jury heard prima facie evidence of those three separate acts of insurance fraud.
I do not accept the attorney general's interpretation that if the police report that was provided contained five or six lies by the defendant that those would also be separate acts of insurance fraud. If the telephone call to Liberty Mutual or the telephonic claim to Liberty Mutual contained separateseveral details of a false claim that each of those details would constitute a separate act of insurance fraud. I surely do not agree with the attorney general's proposition that an admission to an investigator wherein the defendant confesses to insurance fraud in effect is a separate act of insurance fraud. I do not believe that her withdrawal of the claim ... can be reasonably argued to be a separate act of insurance fraud. So I think that ... this whole presentation to the grand jury was very misleading, and I believe it did not include prima facie evidence of five separate acts of insurance fraud. At best it included prima facie evidence of three separate acts of insurance fraud.
And as [defense counsel] pointed out, it could be that in a given case direct evidence of three separate acts of insurance fraud could lead to an inference that other acts of insurance fraud ... were committed, but in this case I don't believe that that is a reasonable inference that the grand jury could have ever made. I really believe here that the Court's view is that the evidence before the grand jury was that there were three separate acts of insurance fraud. Again, the telephonic claim to Liberty Mutual, the false police report to support that claim and the false affidavit to Liberty Mutual in support of that claim. I cannot conclude that an admission to an investigator admitting to insurance fraud or with the withdrawal of the claim in order to avoid prosecution, if you will, constitute[] separate acts of insurance fraud. So the motion to dismiss count one of this indictment is granted for the reasons stated on the record today.
Once the decision was rendered, after a recess, the court reconvened for a status conference regarding the remainder of the case. The State indicated it would either appeal or "move for a superseding indictment within the next couple of weeks." Shortly after we granted the State's motion for leave to appeal, we entered another order, on the State's motion, staying further proceedings in the trial court pending decision on the appeal.
*1253 On appeal, the State reiterates the positions advanced before the trial court. It cites Merin v. Maglaki, 126 N.J. 430, 599 A.2d 1256 (1992), as support. There, the Supreme Court held, in respect of N.J.S.A. 17:33A-4a, the civil counterpart of the criminal provisions now before us, that the submission of six falsified documents in pursuit of a single fraudulent claim for death benefits were separate violations of the statute. See Maglaki, supra, 126 N.J. at 440, 599 A.2d 1256.
We are in substantial agreement with Judge DeVesa's rationale. The result in Maglaki is inapposite on two grounds.
First, there is considerable difference between the five separate incidents of false or fraudulent statements that occurred there, and the several false statements this defendant is alleged to have made in either of her statements to the insurance company or in her report to the police. Here, each lie was an element of the fraudulent endeavor at hand, not a separate incident. The defendant in Maglaki committed distinct acts of fraud, albeit in pursuit of a single objective, but each separate in quality and character, and each based upon its own inherent lie. See id. at 437-440, 599 A.2d 1256. It is of no small significance that each of the fraudulent acts charged against Maglaki was committed via a different document. See id. at 433, 599 A.2d 1256.
Second, we are bound by the venerable principle that penal provisions are to be strictly construed. See State v. Livingston, 172 N.J. 209, 218, 797 A.2d 153 (2002); Maellaro v. Madison Fin. Co., 130 N.J.L. 140, 144, 31 A.2d 485 (Sup.Ct.1943), aff'd, 131 N.J.L. 160, 35 A.2d 714 (E. & A.1944). Where criminal charges are at issue, any textual or circumstantial ambiguity must be resolved in favor of the defendant and against the State. See Livingston, supra, 172 N.J. at 218, 797 A.2d 153.
Given the mandate for strict construction, we discern no adequate support for the State's position in respect of the clause in N.J.S.A. 2C:21-4.6b that reads: "Multiple acts of insurance fraud which are contained in a single ... document shall each constitute an additional, separate and distinct offense for purposes of this subsection." Each lie told in support of one fraudulent claim in a single document cannot reasonably be seen as a separate act of insurance fraud, but rather only as a component of the one fraudulent claim.
With these considerations in mind, we adopt Judge DeVesa's view that several lies contained in a single fraudulent report or document do not each constitute a separate act of insurance fraud under N.J.S.A. 2C:21-4.6b. Accordingly, we affirm the trial court's order dismissing count one of the indictment charging second-degree insurance fraud. We vacate the stay we previously ordered and remand for further proceedings.
NOTES
[1] The remaining three counts of the indictment charge third-degree theft by deception (N.J.S.A. 2C:20-4; N.J.S.A. 2C:5-1); third-degree tampering with public records or information (N.J.S.A. 2C:28-7a(2)); and false swearing under N.J.S.A. 2C:28-2a, a crime of the fourth degree.
[2] We have examined the Attorney General's guidelines, including the "charging considerations in prosecuting the crime of insurance fraud," and find them to be of little assistance in resolving the question at hand. We note among them the following, however: "Ordinarily, if a suspect has multiple claims within (or without) the statute of limitations, that factor weighs heavily in favor of returning a second degree charge under the Insurance Fraud statute." This passage could be taken to place a focus on the number of fraudulent claims made, but it does not necessarily preclude the position taken by the State in this matter.