906 A.2d 1124 (2006)
388 N.J. Super. 190
STATE of New Jersey, Plaintiff-Respondent,
v.
Marshall ROUNTREE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 2005.
Decided September 21, 2006.
*1126 Joshua C. Gillette, argued the cause for appellant on both appeals (Krovatin & Associates, attorneys, Newark; Mr. Gillette, of counsel and on the brief).
Michael J. Williams, Trenton, argued the cause for respondent on both appeals (Peter C. Harvey, Attorney General, attorney; Mr. Williams, of counsel and on the brief).
Before Judges WEFING, WECKER and FUENTES.
The opinion of the court was delivered by
WECKER, J.A.D.
Defendant, Marshall Rountree,[1] appeals from two separate orders, one entered in Camden County and the other in Essex County, each denying his petition for post-conviction relief (PCR). Defendant's appeals were argued before us on the same date. Because many of defendant's arguments on each appeal are inextricably related to his arguments on the other, we address both appeals in a single opinion and affirm both orders.
As a result of his convictions on indictments in two counties, defendant is serving state prison terms totaling sixty years, with twenty-one-and-two-thirds years of parole ineligibility. In Essex County, defendant entered a guilty plea to two second-degree Graves Act crimes: aggravated assault and possession of a firearm for an unlawful purpose. He received concurrent ten-year sentences, each with a five-year period of parole ineligibility. Those convictions and sentences were affirmed on direct appeal on April 7, 1998, on an excessive sentence calendar.
In Camden County, a jury found defendant guilty of first-degree robbery and third-degree hindering prosecution. The trial judge found that defendant used a real gun in the robbery and sentenced defendant as a second offender under the Graves Act. L. 1981, c. 31, codified at N.J.S.A. 2C:43-6c, d, g, and h and N.J.S.A. 2C:44-3d. Defendant received a fifty-year sentence with sixteen-and-two-thirds years of parole ineligibility, consecutive to his Essex County sentence. His conviction and sentence were affirmed on direct appeal and certification was denied. State v. Hawkins, 316 N.J.Super. 74, 719 A.2d 689 (App.Div.1998), certif. denied, 162 N.J. 489, 744 A.2d 1211 (1999).
These appeals raise two significant issues. With respect to the denial of his Camden County petition, defendant's argument raises the question whether State v. Franklin, 184 N.J. 516, 878 A.2d 757 (2005) (applying Apprendi v. New Jersey[2] to Graves Act second-offender sentencing), applies retroactively on collateral review. We conclude it does not.
With respect to the denial of both petitions alleging ineffective assistance of counsel, defendant's appeals raise the question whether effective representation required counsel in each case to seek consolidation of the indictments for purposes of plea negotiations and sentencing, pursuant *1127 to Rule 3:25A-1 and State v. Pillot, 115 N.J. 558, 560 A.2d 634 (1989). Defendant contends that the failure of trial counsel in each county to move for consolidation deprived him of the opportunity to negotiate a combined plea agreement and to be sentenced in a single proceeding, thereby avoiding exposure to a Graves Act second-offender sentence on either indictment. We conclude that although counsel should have moved for consolidation, defendant did not demonstrate that consolidation likely would have made a difference.

I
Extensive details of defendant's crimes are unnecessary to our analysis and resolution of the issues on appeal. Briefly, defendant and two companions became involved in an altercation in Essex County on July 15, 1993. The altercation was sparked when one of defendant's companions spotted his sister's boyfriend. In the course of the ensuing fight, that boyfriend kicked defendant. Defendant pulled out a revolver and shot the boyfriend, leaving him a paraplegic. Defendant fled the scene, tossing the gun down a sewer grate. Two weeks later, on July 27, 2003, defendant, who had not yet been apprehended, was in Camden County. He approached a woman who was about to enter her apartment and threatened to shoot her unless she handed over her purse. Seeing a gun in defendant's hand, she surrendered her purse. She immediately notified the police, and defendant was apprehended shortly thereafter. The gun was never recovered.
The procedural history of each case is unusually convoluted. In Camden County, defendant initially accepted a plea bargain to a Graves Act offense on June 23, 1994. During the course of providing a factual basis for this plea agreement, defendant admitted using a real gun in the robbery. Hawkins, supra, 316 N.J.Super. at 82, 719 A.2d 689. This sworn testimony contradicted defendant's earlier statement to the police after his arrest, in which he contended that he had used a toy gun to frighten the victim.[3]
As part of defendant's Camden County plea bargain, the State promised to recommend a nine-year prison term with three years of parole ineligibility, to run concurrent to any sentence defendant might receive on the Essex County indictment. Defendant had rejected the State's alternative offer, a twelve-year non-Graves Act sentence. When he entered his guilty plea, defendant, as well as the judge, defense counsel, and the prosecutor, knew that defendant was under indictment in Essex County for the shooting there, and that sentencing on the Camden County case likely would await the outcome of the Essex County charges.
Defendant was tried in Essex County in October 1994. The jury found him guilty of first-degree attempted murder in the shooting, as well as second-degree aggravated assault, second-degree possession of a weapon (a firearm) for an unlawful purpose, and third-degree unlawful possession of a weapon. He was sentenced in Essex County on December 16, 1994, to twenty years with a ten-year parole disqualifier. But on March 3, 1995, with the State's consent, the trial judge granted defendant's motion for a new trial.[4] Instead of a retrial, on April 27, 1995, defendant entered a guilty plea in Essex County to second-degree aggravated assault and second-degree *1128 possession of a weapon for an unlawful purpose, both Graves Act offenses. Consistent with his plea agreement, defendant received concurrent ten-year sentences for those crimes, the first five years of each sentence without eligibility for parole. He had not yet been sentenced in Camden County.
When defendant was returned to Camden County for sentencing, the Law Division judge rejected his earlier plea agreement on two grounds: it was too lenient for a first-degree robbery, even if the gun was not real; and if the gun was real, it would be an illegal sentence because it would be a second Graves Act offense. The prosecutor then offered to recommend a twenty-year sentence with a seven-year parole ineligibility term, but defendant rejected that offer. As a result, he faced a mandatory extended-term sentence in Camden County, which was later imposed consecutive to his Essex County sentence.
In his Camden County PCR motion, defendant claimed that his extended-term sentence violated his right to due process under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). He also claimed that he received ineffective assistance of trial and appellate counsel.
The motion judge in Camden County recognized Franklin's holding that the Graves Act second-offender sentencing provisions are unconstitutional under Apprendi, but concluded that Franklin and Apprendi did not apply retroactively on collateral review. The judge rejected all of defendant's ineffective-assistance claims without granting him an evidentiary hearing, finding that defendant failed to demonstrate a prima facie case:
[T]here's been no showing that any testimony is needed to support his claim that trial counsel should have moved for consolidation or moved to exclude the other crimes evidence or should have obtained more suitable clothes or should have moved for mistrial or request cross-racial identification charge or requested gap time and straight jail credit. There's not a prima facie showing that would require an evidentiary hearing in the record.
[T]here's a claim that counsel should have questioned police witnesses regarding inducements that were made to pressure him, but he hasn't produced any affidavits or certifications from any police witnesses to support his claim . . . . [A]nd the same is true with the allegation with respect to the jury panel being tainted . . . . These claims, while we're dealing with them, are such that they're not an affidavit or certification or affidavits or certifications that support a prima facie showing and, therefore, I'm not going to conduct an evidentiary hearing.
The judge in Essex County denied defendant's petition for post-conviction relief in a ruling issued from the bench and later memorialized the ruling in writing. The judge rejected as without merit defendant's argument that his trial counsel provided ineffective assistance by failing to advise him respecting Graves Act consequences of his plea. With respect to the failure to move for consolidation, the judge concluded:
[T]he assumption that a Presiding Judge of a criminal part would grant a motion to consolidate a case with an indictment from another county to circumvent or avoid the purpose of the Graves Act is untenable. Also, defendant's subsequent rejection of what was, in effect, a consolidated plea in Camden County makes the issue moot.

II

A
On appeal from the Camden County order denying PCR, defendant presents these arguments:

*1129 POINT I
THE "SECOND OFFENDER WITH A FIREARM" PROVISIONS OF THE GRAVES ACT, N.J.S.A. 2C:43-6c AND 2C:44-3d, VIOLATE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT INSOFAR AS THEY ALLOW AN EXTENDED TERM TO BE IMPOSED BASED ON A FACT FINDING BY THE SENTENCING JUDGE.
A. APPRENDI RENDERED THE GRAVES ACT UNCONSTITUTIONAL AND THUS DEFENDANT'S SENTENCE WAS AND IS ILLEGAL.
POINT II
BECAUSE TRIAL AND APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, AND BECAUSE DEFENDANT WAS PREJUDICED THEREBY, BOTH COURTS BELOW ERRED BY DENYING HIS PETITIONS FOR POST-CONVICTION RELIEF.
A. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FROM CAMDEN AND ESSEX TRIAL AND PCR COUNSEL AT SEVERAL CRITICAL JUNCTURES.
B. DEFENDANT WAS SEVERELY PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL.
1. DEFENDANT REJECTED A FAVORABLE PLEA OFFER BASED SOLELY ON MATERIAL FALSE INFORMATION RECEIVED FROM THE COURT AND NOT CORRECTED BY HIS CAMDEN COUNSEL.
2. DEFENDANT WAS NOT ADVISED BY THE COURT OR CAMDEN COUNSEL OF THE CONSEQUENCES OF ENTERING A GRAVES ACT PLEA IN CAMDEN WHILE FACING A GRAVES ACT CHARGE IN ESSEX.
3. THE FAILURE OF DEFENDANT'S CAMDEN AND ESSEX TRIAL COUNSEL TO MOVE FOR CONSOLIDATION WAS PREJUDICIAL INEFFECTIVE ASSISTANCE.
4. THE CAMDEN PCR COURT SHOULD HAVE HELD AN EVIDENTIARY HEARING ON DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.
5. THE COURT ERRED IN ITS RESPONSE TO THE JURY QUESTIONS REGARDING THE SIGNATURE ON THE WAIVER CARD AND THE TAPING OF STATEMENTS THEREBY VIOLATING THE PETITIONER'S CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, AND CAMDEN TRIAL COUNSEL WAS INEFFECTIVE IN NOT OBJECTING TO THE COURT'S IMPROPER RESPONSE TO JURY QUESTIONS, AND NOT REQUESTING THAT THE JUDGE MAKE INQUIRY TO JURY TO FIND OUT THE MEANING OF THEIR QUESTIONS.
6. SEVERAL OTHER ISSUES WERE IMPROPERLY DENIED ON PCR WITHOUT A HEARING.

B
On appeal from the Essex County order denying PCR, defendant presents these arguments:
POINT I
BECAUSE TRIAL AND APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, AND BECAUSE DEFENDANT WAS PREJUDICED THEREBY, BOTH COURTS BELOW ERRED BY DENYING HIS PETITIONS FOR POST-CONVICTION RELIEF; IN THE ALTERNATIVE, BECAUSE DEFENDANT HAD PRESENTED TO BOTH PCR COURTS AT LEAST PRIMA FACIE PROOF THAT HE HAD BEEN *1130 DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL, BOTH THE CAMDEN AND ESSEX COURTS SHOULD HAVE GRANTED HIM EVIDENTIARY HEARINGS ON THIS ISSUE.
A. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FROM CAMDEN AND ESSEX TRIAL AND PCR COUNSEL AT SEVERAL CRITICAL JUNCTURES.
B. DEFENDANT WAS SEVERELY PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL.
1. DEFENDANT WAS NOT ADVISED BY THE COURT OR ESSEX COUNSEL OF THE CONSEQUENCES OF ENTERING A GRAVES ACT PLEA IN ESSEX AFTER HAVING PLEADED TO A GRAVES ACT CHARGE IN CAMDEN.
2. THE FAILURE OF DEFENDANT'S CAMDEN AND ESSEX TRIAL COUNSEL TO MOVE FOR CONSOLIDATION WAS PREJUDICIAL INEFFECTIVE ASSISTANCE.
3. THE ESSEX PCR COURT SHOULD HAVE HELD AN EVIDENTIARY HEARING ON DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.

C
We have carefully reviewed the record in light of defendant's contentions. We conclude that no evidentiary hearing was warranted, and we affirm both orders denying post-conviction relief. Nonetheless, the two significant issues raised by defendant warrant extended discussion: (1) whether he should have the benefit of retroactive application of Franklin to his Camden County sentence, and (2) whether he had ineffective assistance of trial counsel due to the failure in each county to move for consolidation. The remainder of defendant's arguments are without sufficient merit to warrant extended discussion in a written opinion. See R. 2:11-3(e)(2).

III
Defendant's first contention respecting his Camden County sentence is that his second-offender Graves Act sentence must be vacated and that he must be resentenced under Franklin, where the Court held that Apprendi invalidates the second-offender sentencing provisions of the Graves Act. Under the Graves Act prior to Franklin, an extended term sentence was mandatory if the judge found certain predicate facts by a preponderance of the evidence: first, that the defendant previously committed one of several specified crimes (including robbery) while using or possessing a firearm, and second, that the defendant was currently being sentenced for a similarly specified crime and used or possessed a firearm while committing that crime. N.J.S.A. 2C:43-6c; 2C:44-3d.
In Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004), the Supreme Court held that Washington State's sentencing guidelines violated the rule enunciated in Apprendi because a judge was permitted to impose an extended sentence "that the jury's verdict alone [would] not allow. . . ." Id. at 304, 124 S. Ct. at 2537, 159 L.Ed.2d at 414. "[T]he `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, supra, 542 U.S. at 303, 124 S.Ct. at 2537, 159 L.Ed.2d at 413.
The defendant in Franklin had entered a guilty plea to his first Graves Act offense several years before he killed his victim by shooting him three times and hitting him twice on the head with a hammer. The *1131 jury found the defendant guilty of second-degree passion/provocation manslaughter, N.J.S.A. 2C:11-4b(2) and -4c, and harassment, N.J.S.A. 2C:33-4b, but inexplicably acquitted him on each of the separate gun-related charges. Franklin, supra, 184 N.J. at 524, 878 A.2d 757. The trial judge nonetheless found that the defendant shot the victim with a handgun, making it his second Graves Act offense, and imposed an extended term sentence of twenty years. Id. at 524-25, 878 A.2d 757. Thus the defendant's extended-term sentence in Franklin was a result of judicial fact-finding and not a jury verdict, just as in this case. See id. at 535-36, 540, 878 A.2d 757.
In Franklin, the New Jersey Supreme Court applied Apprendi's holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455, to the sentencing of a second-offender under the Graves Act. The Court concluded that imposing a Graves Act extended-term sentence violated Franklin's Sixth Amendment right to a jury trial. Franklin, supra, 184 N.J. at 529-30, 540, 878 A.2d 757. The Court cured the constitutional infirmity in this way:
We will conform the Graves Act to the Constitution in the way we believe the Legislature would have intended under the present circumstances, rather than let the second-offender provision perish completely. N.J.S.A. 2C:43-6(d) no longer will empower judges to decide whether a defendant possessed or used a gun in second-offender cases. In the future, if the State intends to seek an extended term under the Graves Act, it must obtain an indictment charging possession or use of the gun in the commission of one of the designated crimes and then submit the charge to the jury. That remedy not only complies with the dictates of Apprendi, but also best achieves the Legislature's purpose in enacting the Graves Act.
[Id. at 539-40, 878 A.2d 757 (citing State v. Natale, 184 N.J. 458, 485-86, 489-90, 878 A.2d 724 (2005) (Natale II)) (internal citations omitted).]
The Court reasoned that the second-offender extended sentencing provision of the Graves Act was a "carbon copy" of New Jersey's hate crime statute, N.J.S.A. 2C:44-3e, which Apprendi had declared unconstitutional on Sixth Amendment grounds.
Like the hate crime statute, the Graves Act permits judicial factfinding by a preponderance of the evidence "to turn a second-degree offense into a first-degree offense." Like motive under the hate crime statute, possession of a gun under the Graves Act is the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."
[Franklin, supra, 184 N.J. at 533, 878 A.2d 757 (citing Apprendi, supra, 530 U.S. at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457, and n. 19).]
Thus as a basis for a second-offender Graves Act sentence, possession of a handgun during the crime "is a fact that must be presented to a grand jury and found by a petit jury beyond a reasonable doubt . . . ." Id. at 534, 878 A.2d 757. The use of a defendant's admission to establish the ground for a Graves Act extended-term sentence is limited to an admission as part of a guilty plea. Id. at 538, 878 A.2d 757.
Defendant was tried before a jury in Camden County. At his sentencing, the judge conducted a Graves Act hearing, as then prescribed by the statute. The judge cited defendant's admission in his original plea hearing as a factor in finding by a preponderance of the evidence that defendant *1132 possessed a real handgun when he committed the robbery. As the judge said, "the most damning statement is the statement that the defendant made when he first entered a plea . . . ." We affirmed. Hawkins, supra, 316 N.J.Super. at 80, 82, 719 A.2d 689. Defendant challenged that finding on Apprendi grounds for the first time in his PCR motion.
Defendant argues that Franklin should apply retroactively to cases on collateral review, that is, to his PCR petition. The United States Supreme Court has determined that retroactive application of Apprendi on collateral review is not required under the United States Constitution. Schriro v. Summerlin, 542 U.S. 348, 358, 124 S.Ct. 2519, 2526-27, 159 L.Ed.2d 442, 452-53 (2004). But defendant argues that even if not required by federal constitutional law, this court should hold that retroactive application of Apprendi and Franklin is mandated by article 1, paragraph 10 of the New Jersey Constitution, guaranteeing persons accused of crime the right to jury trial.
In Natale II and Franklin, the Court considered the issue of retroactivity and gave "pipeline retroactivity" to its holdings. Natale II, supra, 184 N.J. at 494-96, 878 A.2d 724; Franklin, supra, 184 N.J. at 540, 878 A.2d 757. The Court in Franklin explained that its holding would be applicable to "defendants with cases on direct appeal as of the date of [the] decision [August 2, 2005], and to those defendants who raised Apprendi claims at trial or on direct appeal."[5]Franklin, supra, 184 N.J. at 540, 878 A.2d 757 (following Natale II).
We must determine whether defendant is entitled to the retroactive application of Franklin in the context of a collateral review of his Camden County conviction. That determination turns on whether defendant raised a Sixth Amendment, Apprendi-type argument on his direct appeal, and it is plain from the record before us that he did not.[6]See Hawkins, supra, 316 N.J.Super. at 79-82, 719 A.2d 689. Defendant's challenge to his Camden County sentence was solely based on the sufficiency of the evidence to support the judge's finding (under the pre-Franklin Graves Act statute) that defendant used a real gun in the course of committing the robbery. We rejected that challenge. Id. at 80-81, 719 A.2d 689.
There is no reason for us to engage in our own retroactivity analysis with respect to Franklin. The United States Supreme Court has resolved the issue under federal constitutional principles in Summerlin, 542 U.S. at 358, 124 S.Ct. at 2526-27, 159 *1133 L.Ed.2d at 452-53. The New Jersey Supreme Court did so itself in Franklin, adopting "pipeline retroactivity" for the reasons expressed in Natale II. Franklin, supra, 184 N.J. at 540, 878 A.2d 757. There the Court applied state retroactivity jurisprudence and concluded that although its holding established a "new rule of law," which "mark[ed] a departure from criminal sentencing jurisprudence that [had] been in play for a quarter of a century," the new rule would not "affect the reliability of the factfinding process," and "[f]ull retroactivity" would create an unwarranted burden on the court. Natale II, supra, 184 N.J. at 492-93, 494, 878 A.2d 724.
Defendant asks us, as an alternative to full retroactivity, to recognize a limited class of post-conviction relief petitions to which Franklin should apply. Defendant argues that in most pre-Franklin second-offender Graves Act sentences, there was no Apprendi violation because a jury found the requisite Graves Act predicate: use of a firearm. Where a jury verdict included that element, Apprendi and Franklin would offer no basis for post-conviction relief, and there would be no flood of post-conviction relief petitions arising from such a limited class of cases.
In Camden County, defendant was charged with armed robbery but not with a separate weapons offense. Thus in his case, as in Franklin, the jury verdict itself did not establish the required Graves Act element. Defendant argues that granting him  and others similarly situated  retroactive relief under Franklin would not expose the judicial system to an unduly burdensome volume of similar applications. But the Court faced similar circumstances in Franklin itself. We are satisfied that any expansion of the Court's express definition of pipeline retroactivity can come only from the Supreme Court.

IV
Defendant contends that he was entitled to an evidentiary hearing on his ineffective assistance claims in both counties. Once a defendant has established a prima facie showing of ineffective assistance of counsel, he is entitled to an evidentiary hearing to determine whether "the result of the proceeding would have been different . . . ." State v. Russo, 333 N.J.Super. 119, 140, 754 A.2d 623 (App. Div.2000). A defendant's "bald assertions" that counsel was ineffective are not, however, sufficient to satisfy that prima facie burden; the defendant must allege specific facts demonstrating the deficient performance. State v. Cummings, 321 N.J.Super. 154, 170, 728 A.2d 307 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 852 (1999).
To establish an ineffective assistance of counsel claim, a defendant must satisfy the test formulated in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), and United States v. Cronic, 466 U.S. 648, 657-58, 104 S.Ct. 2039, 2046-47, 80 L.Ed.2d 657, 667-68 (1984), which the Supreme Court of New Jersey adopted in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). Under that test, first the defendant must demonstrate "`that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed . . . by the Sixth Amendment.'" Id. at 52, 519 A.2d 336 (quoting Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693). On this first prong, judicial scrutiny must be "highly deferential," and courts must make every effort to "eliminate the distorting effects of hindsight." Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Second, the defendant must prove that due to counsel's deficient performance, the defendant suffered prejudice. Id. at 691-92, 104 S.Ct. at 2066-67, 80 L.Ed.2d at 696. To prevail on a showing *1134 of ineffective assistance of counsel, defendant must prove both prongs: deficient performance and a "reasonable probability" that such performance affected the outcome. Fritz, supra, 105 N.J. at 58, 519 A.2d 336.

A
The heart of defendant's ineffective assistance arguments on both appeals is that he was entitled to the benefit of having his pending sentences, as well as plea negotiations, consolidated pursuant to Rule 3:25A-1 and Pillot. Defendant had to make a prima face case not only that his attorneys should have pursued consolidation, but that such an application likely would have been granted under Pillot and would have made a difference.
Defendant assumes that if the two matters had been consolidated, and he had been sentenced at the same time for both crimes, he would not have been eligible for a mandatory second-offender extended term sentence on either of his Graves Act crimes.
Neither the Supreme Court nor the Appellate Division has explicitly determined whether a second-offender Graves Act sentence can be imposed "based upon convictions and sentences entered in the same proceeding." In State v. Owens, 381 N.J.Super. 503, 506, 886 A.2d 1112 (App. Div.2005) (addressing mandatory repeat drug-offender sentencing), we "conclude[d] that the extended term based upon convictions and sentences entered in the same proceeding is an illegal sentence not authorized by N.J.S.A. 2C:43-6f." But the two statutes, N.J.S.A. 2C:43-6c (applicable to certain repeat firearms offenders) and N.J.S.A. 2C:43-6f (applicable to certain repeat drug offenders), use identical words to define a repeat offender who is subject to a mandatory extended term sentence: one "who has been previously convicted" of a specified predicate offense. Thus Owens, a repeat drug offender case, applies by analogy to a repeat Graves Act offender.
It is less clear how State v. Livingston, 172 N.J. 209, 222, 797 A.2d 153 (2002) (respecting an earlier version of the "Three Strikes" law, N.J.S.A. 2C:43-7.1), affects defendant's assumption that a single sentencing proceeding would have avoided a second-offender sentence. In Livingston, the Court held that "[s]entencing under the `Three Strikes' law [requires that] the predicate convictions have been imposed in two or more separate and distinct proceedings held on different dates."[7]Id. at 213, 797 A.2d 153. The Court noted that a "common practice" had developed under Rule 3:25A-1, encouraging "the assembling of pending charges against a defendant for disposition at a single plea hearing." Id. at 223, 797 A.2d 153 (citing Pillot, supra, 115 N.J. at 568-74, 560 A.2d 634).
This analysis in Livingston is relevant: Our comparative analysis of the various sentence enhancement statutes leads us to conclude that, unlike the sex offender statute, N.J.S.A. 2C:14-6, which is designed to encourage rehabilitation, the *1135 "Three Strikes" law is intended to deter violent crime in a manner similar to the Graves Act, N.J.S.A. 2C:43-6c, and the persistent offender statute, N.J.S.A. 2C:44-3a. Although the Legislature did not define clearly whether multiple convictions entered simultaneously constitute one or more strikes under N.J.S.A. 2C:43-7.1a, we are nonetheless persuaded that such convictions constitute only one strike.[8]
[Livingston, supra, 172 N.J. at 223, 797 A.2d 153 (emphasis added).]
But the Legislature apparently disagreed with Livingston. The "Three Strikes" law was amended in 2003 to provide that a mandatory life sentence applies to "[a] person . . . who has been convicted of two or more crimes that were committed on prior and separate occasions, regardless of the dates of the convictions. . . ." L. 2003, c. 48, § 1. (Emphasis added.) The Legislature has not, however, amended the Graves Act second-offender provision.
We need not, and specifically do not decide here whether Owens applies to Graves Act second-offender sentencing. For purposes of defendant's ineffective-assistance argument, however, we assume that Owens applies.

B
We next consider whether defendant presented a prima facie case under Pillot with respect to the first prong of his ineffective-assistance argument. The defendant in Pillot faced sentencing in two neighboring counties, Bergen and Passaic, as a result of a nine-week crime spree involving six armed robberies, three in each county. Pillot, supra, 115 N.J. at 561-63, 560 A.2d 634. The defendant first pled to three counts of first-degree robbery in Bergen County in exchange for an agreement that the State would recommend a thirty-year maximum term, with a ten-year Graves Act parole ineligibility term. Id. at 562, 560 A.2d 634. Before being sentenced on that plea, the defendant entered a plea to three additional counts of first-degree robbery in Passaic County, with the State's recommendation for a maximum twenty-year term with ten years of parole ineligibility, concurrent to any sentence she received in Bergen County. Ibid.
When the defendant was sentenced in Bergen County, the judge noted that these would be her first convictions, found that the aggravating and mitigating factors were in equipoise, and sentenced the defendant to the then-presumptive term of fifteen years, with a five-year Graves Act period of parole ineligibility. Id. at 562-63, 560 A.2d 634. Shortly thereafter, the defendant appeared for sentencing in Passaic County, where a different judge evaluated defendant's similar record, found no mitigating factors, and imposed a twenty-year sentence with ten years of parole ineligibility, the top of the first-degree range and the maximum sentence under the Passaic plea agreement. Id. at 563, 560 A.2d 634. This court affirmed, and the Supreme Court granted certification. Ibid.
The emphasis of the decision in Pillot was upon consolidation of plea bargaining and sentencing in order to avoid sentencing disparity. Pillot, supra, 115 N.J. at 577, 560 A.2d 634. In Pillot, Justice Handler noted the differences between the two sentencing judges's findings based upon the same pre-sentence investigation report and virtually the same crimes, and emphasized the Court's commitment to "the goal of achieving greater uniformity in sentencing." *1136 Id. at 569, 560 A.2d 634. While recognizing that the paradigm case of sentencing disparity exists when "two similar defendants are treated dissimilarly," id. at 576-77, 560 A.2d 634, nonetheless, the Court concluded that "if the Rule were sought to be invoked in these circumstances, it would have fairly required such consolidation." Id. at 569, 560 A.2d 634.
At the time, Rule 3:25A-1 allowed the prosecutor but not the defendant to move for consolidation. The Court went on to modify that rule "to enable a defendant to request consolidation of charges pending in multiple counties for purposes of offering pleas and for sentencing," id. at 577, 560 A.2d 634, and to recommend that such applications be made "prior to the offer and entry of guilty pleas."[9]Ibid. The Court concluded:

Here, the circumstances fairly dictate consolidation of sentencing. The crimes were committed during a relatively brief period of time; the offenses were substantially similar and were of equal gravity. Although the crimes occurred in different counties, they were in close geographical proximity. Moreover, the sentencing posture of the defendant militates in favor of consolidation. She was a first-time offender in the sense that prior to this crime spree, she had no criminal record; there appears no reason why the presentation of her background and other relevant information as set forth in a pre-sentence report should be duplicated.
[Id. at 578, 560 A.2d 634 (emphasis added).]
Our research has revealed virtually no reported case involving a consolidation issue pursuant to Rule 3:25A-1 or Pillot. We are satisfied that the circumstances here are not sufficiently distinguishable from those in Pillot to discount defendant's argument that he too would have succeeded if a motion for consolidation had been filed. In many respects, the circumstances were similar to those in Pillot. The crimes in this case occurred only two weeks apart; in Pillot, the nine robberies took place over nine weeks. Defendant, like the defendant in Pillot, had no prior record of indictable offenses. And the result of non-consolidation here had potentially far more drastic consequences than the disparity the Court focused on in Pillot.[10] On the other hand, there are certain *1137 distinctions, including the distance between the crime locations and the difference in the crimes charged.
Several facts are plain from the record. Contemporaneous correspondence from defendant's Camden County Public Defender, both to defendant and to his Essex County Public Defender, demonstrates that the Camden County defense attorney contemplated an application for consolidation in 1994; the record does not provide any explanation for the fact that neither counsel followed through. As a result, the factors prescribed by Rule 3:25A-1 were never examined.
On one hand, we might conclude that a judge facing defendant's motion in either county would have been reluctant to grant the motion if the most obvious effect might have been to allow defendant to avoid a second-offender Graves Act sentence. On the other hand, that very potential may have warranted or even required consolidation under Pillot, had it been formally requested. Consolidated plea negotiations are generally advantageous to a defendant. Obviously, consolidated plea negotiations have potential benefits for the State and for the judicial system as well. If these crimes had taken place in the same county, undoubtedly there would have been an attempt to negotiate a plea agreement that resolved all of the pending charges. We conclude that when a defendant has indictments pending in more than one vicinage, defense counsel is obligated to consider the factors set forth in Rule 3:25A-1, and to move for consolidation at an early stage where appropriate.
Here, defense counsel and the judge in Camden County discussed on the record certain purportedly ongoing discussions between the attorneys in both counties, including the possibility of the Camden County charge being sentenced in Essex County, or the alternative of postponing the Camden County sentencing until the Essex County case was resolved. All indications from the transcript of defendant's later-withdrawn guilty plea in Camden County are that the judge would have agreed then to consolidate the matter with the Essex County case. Almost two years later, the judge in Camden County, faced with defendant's Graves Act conviction and sentence in Essex County, and thus a potential second Graves Act conviction, appeared receptive to the State's new offer  twenty years with a seven-year parole disqualifier, concurrent to his Essex County sentence. We agree with defendant that his defense counsel in each county had an obligation to file the contemplated motion for consolidation for purposes of attempting to negotiate a single plea agreement. But counsels' failure to file such a motion establishes only the first prong of the Strickland/Cronic/Fritz standard.

C
Defendant did not present a prima facie case to satisfy the second Strickland prong: that consolidation likely would have made a difference. We assume under the circumstances that motions for consolidation of plea negotiations likely would have been granted in both counties. But as the State argues in its brief in the Camden County appeal, defendant had the opportunity to accept the benefit of an offer on the Camden County charge which was, in effect, a concurrent, ordinary term, first-degree sentence:[11]
On the first day [of trial], the prosecutor remarked that everyone had bent "over *1138 backwards to try and coordinate this with the charge up in north Jersey for the defendant. We waited till that trial has been tried, appealed, re-tried, and the sentence is currently on appeal. This has been ready for trial . . . . The offer is a concurrent offer to the time he's currently serving. I don't [k]now what else can be done for the defendant."
The following day [defense counsel] explained that he had conveyed to defendant the State's plea offer of twenty years with seven years of parole ineligibility, and the further offer that if his Essex County conviction was overturned the prosecutor would agree to the original plea offer of nine years with three years of parole ineligibility. Told by [the judge] not to interrupt when others were talking, defendant replied "F____ that, man. Take me out of here."
The State's argument is that defendant rejected a plea offer that was as good as he reasonably could have expected if the cases had been consolidated for plea negotiations or sentencing. We agree. There is no reason to conclude that he would have accepted the same offer if it had been made after an order of consolidation. Defendant's ineffective-assistance arguments therefore fail to meet the second Strickland prong, that is, failure to consolidate did not likely make a difference.

D
Defendant alleged ineffective assistance in another respect. In his March 9, 2001 affidavit in support of his Camden County PCR motion, referring to the withdrawn plea that became a factor in his sentencing on the Camden County robbery, defendant stated: "Had I known about the [G]raves [A]ct I would have never taken a plea bargain. I asked counsel to inform me of all level[s] of this case and he failed constantly to do this, ultimately resulting in me sitting in prison now." As we know, defendant turned down a twelve-year non-Graves Act offer to plead to first-degree robbery.
As we have previously held, "we agree with those jurisdictions that have held that an attorney's gross misadvice of sentencing exposure that prevents defendant from making a fair evaluation of a plea offer and induces him to reject a plea agreement he otherwise would likely have accepted constitutes remediable ineffective assistance." State v. Taccetta, 351 N.J.Super. 196, 200, 797 A.2d 884 (App. Div.), certif. denied, 174 N.J. 544, 810 A.2d 63 (2002). "Where asserted facts in support of a prima facie claim of ineffective assistance of counsel are outside the record, an evidentiary hearing is required." Id. at 201, 797 A.2d 884; see State v. Pyatt, 316 N.J.Super. 46, 51, 719 A.2d 674 (App.Div.1998) (holding that an evidentiary hearing is required in order to fully examine the nature and extent of attorney-client conversations concerning a plea agreement), certif. denied, 158 N.J. 72, 726 A.2d 936 (1999); see generally State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992).
But in a letter dated March 31, 1994, shortly before the guilty plea in Camden County that was later withdrawn, defendant's then counsel wrote to defendant and explained:
You could plea[d] to this charge as a first degree robbery, without [G]raves [A]ct application, for a flat 12 year New Jersey State Prison sentence. The alternative plea would be to plea[d] guilty as a first degree robbery, but to be sentenced one degree lower as if it was a second degree. The plea offer under those circumstances would be 9 year period of in [sic] New Jersey State Prison with a 3 year period of parole ineligibility pursuant to the [G]raves [A]ct.
. . . .

*1139 Although the prosecutor's plea offer is not as lenient as you would wish, the plea offer does have a certain benefit. If you accept the plea offer for a flat 12 year New Jersey State Prison sentence without any [G]raves [A]ct application, you will not be looking at a potential second [G]raves [A]ct offense in Essex County with the consequences that would flow from a second [G]raves offense. Your exposure for second offense involving the [G]raves [A]ct could be between 20 year[s and life impriso]nment.

[Emphasis added.]
Despite this advice, we know that defendant chose the Graves Act plea agreement in 1994. Thus we are not persuaded by this aspect of defendant's ineffective-assistance argument.

E
We reject defendant's remaining ineffective assistance claim in the Camden County case: that he turned down the offer of a twenty-year term with a seven-year period of parole ineligibility because, based upon what the judge told him, without correction from counsel, he believed that he was not going to receive credit (gap time) on the new sentence for the jail time he had been serving on the Essex County conviction.[12] We have only defendant's "bald assertions" that he would have taken the second plea agreement but for his misunderstanding of his gap time credit. See Cummings, supra, 321 N.J.Super. at 170, 728 A.2d 307. Even if defendant was told in error that he would not receive certain credits against his Camden County sentence, there is no evidence that he was given any reason to believe that he would receive those credits if he was sentenced after a jury verdict, but not if he was sentenced after a guilty plea. This basis for defendant's ineffective assistance claim is entirely without merit.

F
When defendant pleaded guilty to the shooting in Essex County, he admitted that he used a gun  a real gun  to shoot the victim. That admission was consistent with plain evidence of the victim's bullet wounds. There can be no doubt that the crime required a Graves Act sentence. The plea agreement in Essex County was generous; defendant had received a much longer sentence, twenty years with ten years of parole ineligibility, after the jury's verdict, and he faced retrial on the same charges. Nothing counsel or the court did or failed to do had any likelihood of avoiding a Graves Act sentence in Essex County. Our review of the record satisfies us that defendant's arguments respecting ineffective assistance of counsel in Essex County, other than those related to consolidation of his cases, are entirely without merit. See R. 2:11-3(e)(2).

G
In Point II of defendant's brief in the Camden County appeal, he contends that he had ineffective assistance of appellate and post-conviction relief counsel. His brief, however, does not further address or specify the nature of either of those contentions, and we therefore do not consider them. See Cummings, supra, 321 N.J.Super. at 170, 728 A.2d 307.
Affirmed.
NOTES
[1] Defendant is also known as "Mark Hawkins," which is the name in the caption of his direct appeal from the Camden County conviction. State v. Hawkins, 316 N.J.Super. 74, 719 A.2d 689 (App.Div.1998), certif. denied, 162 N.J. 489, 744 A.2d 1211 (1999). That opinion also refers to defendant as "Marshall Roundtree," but the correct spelling appears to be "Rountree."
[2] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[3] Only a real gun qualifies a defendant for a Graves Act sentence, State v. Gantt, 101 N.J. 573, 584-85, 503 A.2d 849 (1986), whereas use of a toy gun in a robbery can elevate the crime to first degree if the victim reasonably perceives the gun to be real. See State v. Ortiz, 187 N.J.Super. 44, 49-50, 453 A.2d 567 (App.Div.1982); N.J.S.A. 2C:11-1c.
[4] The State agreed with defendant that errors in the jury charge required a new trial and therefore joined in defendant's motion.
[5] Apprendi was decided by the United States Supreme Court while Franklin's direct appeal was pending, and the defendant in Franklin raised an Apprendi argument in his direct appeal. See Franklin, supra, 184 N.J. at 526, 878 A.2d 757. The Supreme Court granted certification after defendant's petition for post-conviction relief was denied, id. at 526-27, 878 A.2d 757, because defendant raised "a legitimate and important constitutional question concerning whether judges may determine facts that will authorize an extended term under the Graves Act." Id. at 528, 878 A.2d 757 (quoting R. 3:22-5).
[6] The United States Supreme Court decided Apprendi in 2001. Apprendi himself raised the Sixth Amendment challenge to New Jersey's hate crime and its extended term sentencing scheme on direct appeal to this court in 1997, see State v. Apprendi, 304 N.J.Super. 147, 153, 698 A.2d 1265 (App.Div.1997), as well as on appeal to the New Jersey Supreme Court, see State v. Apprendi, 159 N.J. 7, 12, 731 A.2d 485 (1999). Although Apprendi's argument did not prevail until his case reached the United States Supreme Court, it did result in published dissents at each level of appeal in state court. 159 N.J. at 29, 731 A.2d 485 (Stein, J., dissenting); 304 N.J.Super. at 161, 698 A.2d 1265 (Wecker, J., dissenting).
[7] In a concurring opinion based on what he saw as the clear language of the statute, Justice Stein recognized the resulting anomaly: "that pleas on successive days to two charges subject to the Three Strikes law result in eligibility for Three Strikes sentencing but pleas on the same day to such charges do not." Livingston, supra, 172 N.J. at 227, 797 A.2d 153 (Stein, J., concurring). And in a separate opinion concurring in part and dissenting in part, Justice Long found the distinction the majority drew between convictions on the same day not qualifying, and convictions on consecutive days qualifying, to be irrational; she would have required sufficient separation between qualifying convictions to demonstrate a failed opportunity for rehabilitation. Id. at 227-29, 797 A.2d 153 (Long, J., concurring in part and dissenting in part).
[8] The "Three Strikes" law in the form addressed in Livingston applied to ("[a] person. . . who has on two or more prior and separate occasions been convicted . . ."). See Livingston, supra, 172 N.J. at 217, 797 A.2d 153.
[9] As amended in 1992 pursuant to Pillot, 115 N.J. at 577, 560 A.2d 634, Rule 3:25A-1 provides in pertinent part:

Notwithstanding the provisions of Rule 3:14 [respecting trial venue], when a defendant has charges pending in more than one county at any stage prior to sentencing, either the defendant, or the prosecutor in any such county with the consent of the defendant, may move before the presiding judge of the criminal part in the county in which consolidation is sought, or before any judge designated to hear such motion, for consolidation for purposes of entering a plea or for sentencing. Written notice of such motion and an opportunity to be heard shall be given to the prosecutor in each county in which such a charge is pending. The motion shall be supported by certification that includes the information the court is required to consider under this Rule.
In deciding whether to order consolidation and, if so, the county to be the forum for the consolidated charges, the judge shall consider: (1) the nature, number, and comparative gravity of crimes committed in each of the respective counties; (2) the similarity or connection of the crimes committed including the time span within which the crimes were committed; (3) the county in which the last crime was committed; (4) the county in which the most serious crime was committed; (5) the defendant's sentencing status; (6) the rights of the victims and the impact on any victim's opportunity to be heard; and (7) any other relevant factor.
[Emphasis added.]
[10] The Court in Pillot did not refer to the Graves Act's second-offender provisions. Were it not for the defendant's plea agreements in that case, she would have been exposed to second-offender Graves Act sentencing.
[11] That offer at the top of the ordinary first-degree range may also be viewed as the bottom of the extended-term first-degree range.
[12] The PCR motion judge filed an amended judgment of conviction, apparently correcting defendant's gap time credits.