**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2823-19

STATE OF NEW JERSEY,

Plaintiff-Respondent,

v.

CHARLES L. PURYEAR, a/k/a CHARLES POURYEAR, CHARLES LAMONT PURYEAR, CHARLES PURYER and LAMAR BOYD,

Defendant-Appellant.

---

Submitted March 1, 2021 – Decided April 20, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 12-07-0296.

Joseph E. Krakora, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah C. Hunt, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from the December 11, 2019 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Defendant and codefendant Marcus Brown were indicted and charged with numerous crimes in Essex and Sussex Counties. The Essex County indictment included conspiracy, murder,[1] armed robbery, and weapons-related offenses. The Sussex County indictment, which is the subject of this appeal, included first-degree robbery, second-degree burglary, third-degree theft, third- and fourth-degree aggravated assault, and weapons-related offenses. The Essex County charges stemmed from a fatal shooting that occurred on November 25, 2011, in Newark, when defendant fired nine shots at a group of people during the commission of a robbery, hitting and killing one person. The Sussex County charges stemmed from an armed robbery that occurred several days later, on December 4, 2011, in a motel in Wantage, after which both defendants were apprehended near the scene.

[1] Defendant was charged with purposeful and knowing murder, N.J.S.A. 2C:11-3(a)(1)(2), as well as felony murder, N.J.S.A. 2C:11-3(a)(3), while codefendant Brown was charged with felony murder only.

The following day, December 5, 2011, each defendant was separately questioned twice by law enforcement officers from different agencies. Defendants were interviewed by members of the New Jersey State Police about the Wantage robbery and by Essex County detectives about the Newark shooting. At the beginning of each interview, defendants were advised of their Miranda[2] rights and signed Miranda waiver forms. All four interviews were recorded. Each defendant made incriminating statements during each interview and later moved to suppress the statements in the Essex County case. Because the State moved to use portions of the statements that did not relate to the Essex County charges under N.J.R.E. 404(b), the admissibility of all four statements was adjudicated in a joint Miranda hearing in Essex County.

Following the hearing, on December 17, 2014, an Essex County judge suppressed defendant's statement concerning the Wantage robbery, but admitted the statement concerning the Newark shooting. As to codefendant Brown's statements, the judge suppressed the statement concerning the Newark shooting, but admitted the statement concerning the Wantage robbery. The judge determined that each defendant's Miranda rights had been violated in connection with the excluded statements, but not the admitted statements. By leave granted,

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

we reviewed the judge's Miranda rulings and, in a published opinion, affirmed the decisions. State v. Puryear, 441 N.J. Super. 280 (App. Div. 2015).

After we issued our decision, on July 14, 2015, the judge dismissed the Essex County indictment as to codefendant Brown on the State's motion. Brown had previously pled guilty to charges contained in the Sussex County indictment, specifically robbery and certain persons not to have weapons, and was sentenced in accordance with the plea agreement to an aggregate term of twelve years' imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[3]

Unlike codefendant Brown, the State continued to prosecute defendant on both indictments notwithstanding the suppression of his statement in the Wantage robbery. As a result, on March 8, 2016, defendant entered a negotiated guilty plea to charges contained in the Essex County indictment, specifically, aggravated manslaughter as a lesser included offense of murder, two counts of first-degree robbery, and second-degree unlawful possession of a handgun. On May 2, 2016, defendant was sentenced in accordance with the plea agreement to an aggregate term of twenty-five years' imprisonment, subject to NERA.

---

[3] We affirmed the denial of Brown's PCR petition in an unpublished decision. See State v. Brown, No. 4134-16 (App. Div. June 25, 2018).

Thereafter, on April 13, 2017, defendant entered a negotiated guilty plea to first-degree robbery and second-degree certain persons not to have weapons as charged in the Sussex County indictment. Under the terms of the plea agreement, on the first-degree charge, the State would move for an extended term pursuant to N.J.S.A. 2C:43-7.1(b)(2), mandating an "[e]xtended [t]erm for [r]epeat [v]iolent [o]ffenders" of "between [twenty] years and life imprisonment," N.J.S.A. 2C:43-7, on a first degree crime. To support the motion, the State relied on defendant's 2006 conviction for a fourth-degree regulatory firearms offense, and 2006 conviction for third-degree aggravated assault, as well as the 2016 convictions arising from the Essex County indictment. The State agreed that regardless of the outcome of the motion, it would not seek an aggregate sentence in excess of thirty years' imprisonment to run concurrent, but not coterminous, with defendant's Essex County sentence. Subsequently, the judge granted the State's extended term motion and, on June 16, 2017, sentenced defendant to thirty years' imprisonment, subject to NERA.[4]

[4] Pursuant to the plea agreement, because the State's extended term motion was granted, at sentencing, the State moved to dismiss the certain persons charge and recommended the imposition of a thirty-year sentence on the robbery charge.

On February 8, 2018, we affirmed defendant's thirty-year sentence on a Sentence Only Argument (SOA) calendar, finding "that the sentence [was] not manifestly excessive or unduly punitive and [did] not constitute an abuse of discretion." See R. 2:9-11. Thereafter, defendant filed a timely pro se petition for PCR, alleging ineffective assistance of counsel (IAC). In his supporting certification, defendant asserted, among other things,[5] that his attorney was ineffective by "fail[ing] to properly advise [him] concerning the plea and the ensuing exposure to an extended term of incarceration." Defendant also averred that "[t]he [S]tate used an illegal sentence to obtain the plea" and that his "[thirty-year] sentence . . . [was] disproportionate to [his] co-defendant['s twelve-year] sentence . . . and should be brought in line with . . . [that] sentence."

In his counseled brief, defendant similarly argued his plea counsel "was ineffective for . . . fail[ing] to advise [him] as to the ramifications of the [Essex County] plea" and "the effect that would have on [his Sussex County] sentence," and failing to advise him concerning his "ensuing exposure to an extended term." He reiterated that the State "used an illegal sentence to obtain his guilty plea,"

---

[5] The other claims raised by defendant in his petition have been abandoned on appeal. See Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining that claims not addressed in the merits brief are "consider[ed] . . . abandoned").

and that his sentence was disproportionate to his codefendant's. He also argued his appellate counsel was ineffective for failing to pursue "all of the appropriate issues which should have been raised" on direct appeal.

Following oral argument, the PCR judge entered an order on December 11, 2019, denying defendant's petition. In an oral decision, the judge reviewed the factual background and procedural history of the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie case of IAC. Specifically, the judge found defendant failed to show by a preponderance of the credible evidence that counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), and that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. See State v. DiFrisco, 137 N.J. 434, 456-57 (1994) (applying the Strickland test "to challenges of guilty pleas based on [IAC]" (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985))); see also State v. Gaitan, 209 N.J. 339, 350 (2012) ("With respect to both prongs of the Strickland test, a defendant asserting [IAC] on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence.").

Based on his review of the April 13, 2017 plea colloquy, the judge found that defendant's assertion that he was not properly advised of the ramifications of his guilty plea, including his exposure to an extended term, was belied by the record. Further, "there [were] no factual disputes" because defendant did not provide the court with "an affidavit or a certification or anything else to dispute what th[e] plea transcript reveal[ed]." Further, the judge determined "[t]here was nothing . . . that was illegal about the sentence . . . imposed."[6] Additionally, in rejecting the proportionality claim, the judge explained that defendant's conviction "in Essex [County] for aggravated manslaughter . . . was the distinguishing feature for justification of the [thirty]-year sentence." The judge pointed out that defendant's proportionality argument was unfounded because codefendant Brown's "charges in Essex [County] were dismissed," and thus "there was no conviction for a homicide on Brown's record" as was the case for defendant. Moreover, according to the judge, an evidentiary hearing was not warranted.

On appeal, defendant raises the following arguments for our consideration:

<u>POINT I</u>

[6] Indeed, PCR counsel conceded "there [was] no question that it was a legal sentence."

BY FAILING TO CONSOLIDATE THE CASES IN BOTH SUSSEX AND ESSEX COUNTIES AND IN FAILING TO PLEA BARGAIN IN ONE COUNTY, COUNSEL FOR DEFENDANT WAS INEFFECTIVE IN THAT DEFENDANT RECEIVED A SENTENCE OF [TWENTY-FIVE] YEARS IN PRISON, SUBJECT TO [NERA] WITH A CONCURRENT EXTENDED TERM OF [THIRTY] YEARS IN PRISON ALSO SUBJECT TO [NERA], WHILE HIS CO-DEFENDANT RECEIVED [TWELVE] YEARS IN PRISON SUBJECT TO [NERA], IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS.

. . . .

[A.] Counsel Was Ineffective In Failing To Move To Consolidate The Indictments.

[B.] Counsel Was Ineffective As He Permitted Defendant To Enter A Guilty Plea And Receive A Prison Sentence That Was Vastly Disproportionate To That Of His Co-Defendant's.

[C.] The Combination Of Lack Of Consolidation And The Disparity Of The Sentences Require A Remand.

In order to establish the Strickland/Fritz test to set aside a guilty plea based on IAC, "a defendant must show that (i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" State v. Nuñez-

Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting DiFrisco, 137 N.J. at 457). As to the prejudice prong, "a [defendant] must convince the court that a decision to reject the plea bargain" and "insist on going to trial" would have been "rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." Ibid.

The mere raising of a PCR claim does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, "view[ing] the facts in the light most favorable to a defendant," State v. Preciose, 129 N.J. 451, 463 (1992), PCR judges should grant evidentiary hearings in their discretion only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013); State v. Marshall, 148 N.J. 89, 158 (1997).

Here, we are satisfied from our review of the record that defendant failed to make a prima facie showing of IAC within the Strickland/Fritz test to warrant PCR relief or an evidentiary hearing. See State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) ("[W]e review under the abuse of discretion standard

the PCR court's determination to proceed without an evidentiary hearing."); State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) ("[I]t is within our authority to conduct a de novo review of both the factual findings and legal conclusions of the PCR court" where, as here, no evidentiary hearing was conducted. (citations and internal quotation marks omitted)).

Defendant argues plea counsel was ineffective for failing to move to consolidate the Sussex and Essex County cases and for permitting him to plead guilty and receive a "sentence . . . disproportionate to that of his co-defendant." The State correctly points out that defendant raises the failure to consolidate claim for the first time on appeal. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). However, we are hard pressed to disregard defendant's failure to consolidate claim given our conclusion in State v. Rountree, 388 N.J. Super. 190, 212 (App. Div. 2006), "that when a defendant has indictments pending in more than one vicinage, defense counsel is obligated

to consider the factors set forth in Rule 3:25A-1,[7] and to move for consolidation at an early stage where appropriate."

In Rountree, defendant shot a man in Essex County during an altercation, "leaving him a paraplegic" and, "[t]wo weeks later," robbed a woman at gunpoint in Camden County. Id. at 196. We noted that despite "the distance between the crime locations and the difference in the crimes charged," "[t]he crimes . . . occurred only two weeks apart," "[d]efendant . . . had no prior record of indictable offenses," and "the result of non-consolidation . . . had potentially . . . drastic consequences . . . ." Id. at 211. Thus, "[w]e agree[d] with defendant that his defense counsel in each county had an obligation to file the contemplated

---

[7] Under the rule, a defendant "may move . . . for consolidation for purposes of entering a plea or for sentencing." R. 3:25A-1. In deciding the consolidation motion,

> the judge shall consider: (1) the nature, number, and comparative gravity of crimes committed in each of the respective counties; (2) the similarity or connection of the crimes committed including the time span within which the crimes were committed; (3) the county in which the last crime was committed; (4) the county in which the most serious crime was committed; (5) the defendant's sentencing status; (6) the rights of the victims and the impact on any victim's opportunity to be heard; and (7) any other relevant factor.
>
> [Ibid.]

motion for consolidation for purposes of attempting to negotiate a single plea agreement." Id. at 212-13. See also State v. Pillot, 115 N.J. 558, 569 (1989) (explaining that if Rule 3:25A-1's predecessor had been invoked,[8] consolidation would have been "required" where the defendant, a first-time offender, faced sentencing in two neighboring counties as a result of a nine-week crime spree involving six armed robberies, three in each county).

However, in Rountree, we determined that "counsels' failure to file such a motion establishes only the first prong of the [Strickland/Fritz] standard." 388 N.J. Super. at 213. Assuming that the consolidation motion "would have been granted in both counties," we held that the "[d]efendant did not present a prima facie case to satisfy the second Strickland prong: that consolidation likely would have made a difference." Id. at 213. We made that determination because the "defendant rejected a plea offer that was as good as he reasonably could have expected if the cases had been consolidated for plea negotiations or sentencing" and "[t]here [was] no reason to conclude that he would have accepted the same offer if it had been made after an order of consolidation." Ibid.

---

8 "At the time, Rule 3:25A-1 allowed the prosecutor but not the defendant to move for consolidation." Rountree, 388 N.J. Super. at 210.

Likewise, here, even if we conclude that counsel should have moved for consolidation and that consolidation would have been granted, defendant failed to demonstrate that consolidation "likely would have made a difference" because, like Rountree, the plea offer "was as good as he reasonably could have expected if the cases had been consolidated for plea negotiations or sentencing." Ibid. In support, we point out that the Sussex County prosecutor conferred a substantial benefit on defendant by recommending that the term run concurrent, though not coterminous, to the Essex County sentence. Moreover, even if a consolidation motion had been granted, defendant would still have been eligible for an extended term. See State v. Parks, 192 N.J. 483, 487 (2007) (noting that N.J.S.A. 2C:43-7.1 "applies to a defendant convicted of an enumerated crime who has been convicted of two or more of those crimes that were committed on prior and separate occasions, regardless of the dates of the convictions" (quoting Assemb. Judiciary Comm. Statement to S.B. 1733 (2003))).

Additionally, unlike Pillot, where each sentencing judge evaluated the defendant's similar record differently, here, the sentencing judge in each case found the same aggravating factors, factors three, six, and nine, and no mitigating factors. 115 N.J. at 562-63. See N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"); N.J.S.A. 2C:44-1(a)(6) ("[t]he

extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"); and N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). When defendant was sentenced in the Sussex County case, the parties as well as the judge were keenly aware of the sentence defendant was serving in Essex County. Indeed, the judge acknowledged that the fact that the sentences were concurrent but not coterminous "serv[ed] the interest of justice" because the Wantage crimes "were separate crimes, on separate dates, involving separate formulations of planning and intent and execution," and separate victims. Thus, we are satisfied defendant failed to establish a prima facie case of IAC on his failure to consolidate claim.

Turning to the sentencing disparity claim, to be sure, "[e]nsuring a reasonable degree of uniformity in sentencing is an essential feature of our system of justice." State v. Case, 220 N.J. 49, 63 (2014). We recognize that our Supreme Court has "consistently stressed uniformity as one of the major sentencing goals in the administration of criminal justice." State v. Roach, 146 N.J. 208, 231 (1996). Indeed, "[o]ne of the Code's paramount goals is to eliminate arbitrary and idiosyncratic sentencing so that similarly situated defendants receive comparable sentences." Case, 220 N.J. at 63.

Thus, "[d]isparity may invalidate an otherwise sound and lawful sentence." Roach, 146 N.J. at 232. See State v. Hicks, 54 N.J. 390, 391-92 (1969) (reducing defendant's sentence to that imposed on co-defendant whose participation in the homicide was greater than defendant's). However, not all disparate sentences are unfair or unjust, and "a sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter." Id. at 391. "The question therefore is whether the disparity is justifiable or unjustifiable." Roach, 146 N.J. at 233.

The Roach Court "recognize[d] that some disparity in sentencing is inevitable in the administration of criminal justice." Id. at 234. However, "to avoid or reduce" unjustifiable disparity, the Court imposed an obligation on sentencing courts to "exercise a broader discretion to obviate excessive disparity." Id. at 233. To that end,

> [t]he trial court must determine whether the co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria. The court should then inquire into the basis of the sentences imposed on the other defendant. It should further consider the length, terms, and conditions of the sentence imposed on the co-defendant. If the co-defendant is sufficiently similar, the court must give the sentence imposed on the co-defendant substantive weight when sentencing the defendant in order to avoid excessive disparity. Sentencing based on such added considerations will accommodate the basic discretion

> of a sentencing court to impose a just sentence on the individual defendant in accordance with the sentencing guidelines while fulfilling the court's responsibility to achieve uniform sentencing when that is possible.
>
> [Id. at 233-34.]

Based on our review of the record, we agree with the PCR judge that the sentencing disparity between defendant and codefendant Brown was justifiable. Simply put, while both defendants stood convicted of the same crimes in Sussex County, defendant and codefendant Brown were not similarly situated defendants. Defendant had an extensive criminal history consisting of juvenile adjudications for aggravated assault, receiving stolen property, and criminal trespass as well as an adult record. His adult record, which subjected him to a mandatory extended term as a persistent violent offender, included the aggravated manslaughter and other convictions from the Essex County indictment. As a result, after granting the State's motion for extended term sentencing, the judge found aggravating factors three, six, and nine, and no mitigating factors in imposing the sentence on defendant.

On the other hand, as we noted in our unpublished opinion affirming the denial of codefendant Brown's PCR petition, the sentencing judge there "found

aggravating factors three and nine and mitigating factor three."[9] Brown, slip op. at 6. Significantly, because the Essex County indictment had been dismissed against codefendant Brown, unlike defendant, codefendant Brown did not have a prior homicide, robbery or weapons-related conviction when he appeared for sentencing, and he was not extended term eligible. Moreover, at the Sussex County sentencing hearing, defense counsel strenuously argued that defendant should be sentenced to a twenty-five-year NERA term to run concurrent with the Essex County sentence in part because codefendant Brown was sentenced to a twelve-year NERA term for the same charges. Defense counsel explained to the judge that although both defendants had been charged in the Essex County indictment, the suppression of codefendant Brown's statement resulted in the dismissal of the indictment against him. Thus, the sentencing judge was aware of all relevant sentencing criteria for both defendants, including the length of the codefendant's sentence and the rationale for the more lenient sentence, as outlined in Roach. 146 N.J. at 233-34.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

9 See N.J.S.A. 2C:44-1(b)(3) ("[t]he defendant acted under a strong provocation").