**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2438-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY BETHEA, a/k/a
ANTHONY MASON,

    Defendant-Appellant.

_____

Submitted March 3, 2020 – Decided April 8, 2020

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 08-11-0955.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen Ann Lodeserto, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Caitlyn Kelly, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Anthony Bethea appeals from a December 5, 2018 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We derive the following facts from the PCR record and the chronology set forth in our unpublished opinion on August 31, 2015,[1] in which we affirmed defendant's conviction, sentence, and the trial court's denial of his motion to suppress. Defendant was initially charged as a juvenile in connection with the murder and robbery of his eighty-four-year-old neighbor, J.E.[2] At the time defendant was charged, he was almost seventeen years and nine-months old.[3]

Following defendant's arrest, the Trenton police department contacted defendant's mother and advised her that her son was a suspect in J.E.'s homicide. Defendant's mother signed a "Trenton Police Department Consent Form for the Interview of a Juvenile Suspect," which waived her presence and gave consent for her son to be interviewed in her absence.

---

[1] State v. Bethea, No. A-0004-13 (App. Div. Aug. 31, 2015).

[2] We use initials to protect the identity of the victim. R. 1:38-3(c)(12).

[3] Defendant was born in February 1990.

Thereafter, defendant was interviewed by two police officers, who read the "Mercer County Uniform Complaint/Arrest Warrant Notice Form" to defendant, notifying him of the charges. Defendant indicated he understood the charges. He was also given his Miranda[4] warnings, read them out loud, and signed the form.

Defendant was questioned for an hour and fifteen minutes. Officer Manuel Montez told defendant he "would still be young when released from prison and would try to help him out." Defendant told detectives he was "straight," had to "face the time," and "man-up for [his] mistakes."

Following an indictment for first-degree murder, N.J.S.A. 2C:11-3(a)(2), and other offenses associated with the murder of J.E., defendant moved to suppress his statement. We upheld the trial court's decision to deny the motion to suppress and concluded that defendant's confession "was the product of his own free will." Moreover, we noted that defendant had completed some high school education, and he had familiarity with the criminal process based upon his previous encounters with the law.

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2438-18T3

In our prior opinion, we affirmed defendant's sentence of fifty years' imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On October 29, 2015, defendant filed a pro se PCR petition. In March 2016, defendant filed a second PCR petition because he did not receive a response to his first filing. The court assigned counsel, who filed an amended petition on June 9, 2018. Counsel argued that although defendant filed his petition two days late, the PCR court should deem the late filing was excusable neglect because the petition was signed two days before the October 23, 2015 deadline.

On June 15, 2018, PCR counsel filed a brief in support of defendant's petition, arguing that defendant's sentence was unconstitutional under Miller v. Alabama, 567 U.S. 460 (2012), and State v. Zuber, 227 N.J. 422 (2017), because the trial court did not consider defendant's youth and attendant circumstances as mitigating factors.

On the return date of defendant's PCR petition, defendant argued that he was entitled to an evidentiary hearing on his claim that his sentence was unconstitutional under Miller and Zuber. Defendant characterized himself as having an "intellectual disability" and argued "he did not knowingly,

intelligently, and voluntarily waive his <u>Miranda</u> rights because of his age and below-average intelligence." Defense counsel also argued there were two psychological evaluations "readily available" at the time of defendant's sentencing and trial counsel was ineffective for not producing them to the trial court.

Defendant advanced three arguments to support his PCR claim that trial counsel afforded ineffective assistance: (1) counsel failed to investigate his intellectual disabilities and his mother's consent for the police to interview him; (2) a more thorough investigation of his disabilities would have led to more favorable plea negotiations; and (3) counsel should have argued mitigating factor four at sentencing because there were "substantial grounds tending to excuse or justify defendant's conduct" under N.J.S.A. 2C:44-1(b)(4). Defendant further contended that trial counsel's cumulative errors constituted ineffective assistance and he was entitled to an evidentiary hearing.

After due consideration of the issues raised, the PCR court denied the petition. In a twenty-one-page written decision, the PCR court distinguished defendant's case from <u>Miller</u> and <u>Zuber</u>:

> [Defendant] was not sentenced to life without the possibility of parole; he was given a sentence of fifty years, with forty-two-and-a-half years of parole ineligibility. Clearly then, [defendant] was not

A-2438-18T3

subjected to a sentencing scheme preordaining a sentence of life without parole. . . .

Even if [defendant] had clearly raised a Zuber claim, it would still fail, as [defendant's] sentence is not the "practical equivalen[t] of life without parole."

[(second alteration in original) (citations omitted).]

The PCR court determined Zuber was not applicable because:

In Zuber, the defendants were respectively sentenced to 110 years ([fifty-five] years before parole eligibility) and [seventy-five] years ([sixty-eight] years and [three] months before parole ineligibility) for actively participating in two violent gang rapes. Thus, the defendants would respectively be seventy-two and eighty-five years old before reaching parole eligibility. The [C]ourt remarked that each defendant would spend more than [fifty] years in prison, longer than some adults convicted of first-degree murder.

In the case at bar, [defendant] was seventeen years old at the time of his crime. Rather than proceeding to trial, [defendant] agreed to a negotiated plea of [fifty] years [subject to] NERA. [The sentencing judge] sentenced [defendant] in accordance with his plea agreement. [Defendant] will be eligible for parole in 2052, at which point he will be [fifty-nine and one-half] years old. While we may not refer to actuarial tables to conclude [defendant's] sentence does not violate Zuber, it is evident that [defendant] will be exiting the prime years of his life once he becomes eligible for parole.

The PCR court concluded that the holdings in Miller and Zuber did not entitle defendant to a reconsideration of his sentence.

6

The PCR court further held that defendant failed to "consistently define" his alleged disabilities, specifically whether this term as used by defendant refers to his lower-than-average intelligence or Attention Deficit Hyperactivity Disorder (ADHD). Because defendant did not present any details to support his contentions, the court rejected his argument.

The PCR court further found that defendant failed to explain how counsel's investigation of the case would have had an impact upon the Miranda hearing. Even if trial counsel was ineffective for not investigating defendant's disabilities, the PCR court found defendant's claim failed under the second prong of Strickland.[5] Citing State v. Carpenter, 268 N.J. Super. 378, 385 (App. Div. 1993), the PCR court held "[i]t is well[-]established that a suspect's lack of intelligence—alone—will not obviate an otherwise valid Miranda waiver." Ibid.

Regarding the ineffective-assistance-of-counsel claim, the PCR court determined defendant's argument was procedurally barred under Rule 3:22-5, relying on our opinion that "he did not knowingly, intelligently, and voluntarily waive his Miranda rights because of his below-average intelligence." Bethea, slip op. at 14. We noted there was "ample evidence that defendant's confession was the product of his own free will," stating:

---

[5] Strickland v. Washington, 466 U.S. 668, 687 (1984).

[Detective] Montez read defendant his <u>Miranda</u> rights and the accompanying forms before asking him to read the documents aloud. Montez also repeatedly asked defendant if he understood the forms and his rights. Each time, defendant replied, "Yes, sir." Montez gave defendant a "clear and easy-to-understand" explanation that meaningfully informed him of his constitutional rights.

[<u>Id.</u> at 14-15.]

With regard to defendant's claim that trial counsel was ineffective for not calling defendant's mother as a witness at the <u>Miranda</u> hearing, the PCR court determined it was "irrelevant, for the evidence submitted would not alter the result of defendant's case, even if it were presumed authentic." The PCR court explained:

> Put simply, taking [the mother's] certification as valid would defy common sense. [Mother's] certification claims "she wanted to be present" during [defendant's] interrogation and "would have never allowed her son to speak with police without her presence and or the presence of a lawyer." However, in the Trenton Police Department "Consent Form for the Interview of a Juvenile Suspect" (Consent Form), [mother] acknowledged Detective Montez "requested my presence during the interview." Further, the Consent Form recorded [mother's] refusal to accompany [defendant] and her grant of "consent for [defendant] to be interviewed in my absence." [Mother] also recognized "that [defendant and I] have the right to be represented by an attorney," yet decided "[defendant and I] do not wish that representation at this time."

A-2438-18T3

Finally, the Appellate Division specifically found [mother's] "absence from the interrogation [did not] render [defendant's] confession inadmissible," since [mother] spoke with Detective Montez, was informed of the charges against defendant, and "chose not to be present for the interrogation." Thus, the court concluded [mother] "was not tricked, threatened, coerced, or intentionally excluded" from [defendant's] interrogation. These findings—like the Consent Form signed by [mother]—explicitly refute [mother's] instant certification.

Thus, under the most indulgent reading of the PCR petition, the PCR court concluded that the two prongs of the Strickland/Fritz[6] test were not met.

On appeal, defendant raises the following arguments:

POINT ONE

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BECAUSE TESTIMONY IS NEEDED REGARDING TRIAL COUNSEL'S FAILURE TO ADVISE THE TRIAL COURT OF DEFENDANT'S INTELLECTUAL DISABILITIES AS THEY AFFECTED EVERY STAGE OF HIS MATTER.

POINT TWO

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BECAUSE TESTIMONY IS NEEDED REGARDING TRIAL COUNSEL'S FAILURE TO CALL [HIS MOTHER] AS A WITNESS AT THE MIRANDA

---

[6] State v. Fritz, 105 N.J. 42, 58 (1987).

HEARING TO CONTRADICT THE TESTIMONY OF
DETECTIVE MONTEZ.

POINT THREE

THE PCR COURT ERRED IN DENYING
DEFENDANT AN EVIDENTIARY HEARING
BECAUSE TESTIMONY IS NEEDED REGARDING
TRIAL COUNSEL'S FAILURE TO ADVISE THE
TRIAL COURT OF DEFENDANT'S
INTELLECTUAL DISABILITIES PRIOR TO
PLEADING GUILTY, AND IT . . . ALSO NEEDS TO
BE DETERMINED IF DEFENDANT UNDERSTOOD
THE TERMS OF HIS GUILTY PLEA GIVEN HIS
INTELLECTUAL LIMITATIONS.

POINT FOUR

THE PCR COURT ERRED IN DENYING
DEFENDANT AN EVIDENTIARY HEARING AS
TRIAL COUNSEL WAS INEFFECTIVE AT
SENTENCING IN FAILING TO ARGUE
DEFENDANT'S YOUTH AND INTELLECTUAL
LIMITATIONS AT SENTENCING.

II.

We have thoroughly reviewed the record and conclude the PCR judge

correctly found that defendant was not entitled to an evidentiary hearing.

Evidentiary hearings on PCR petitions are neither mandated nor necessary to

fully and properly evaluate each issue for relief asserted.  See State v. Marshall,

148 N.J. 89, 157-58 (1997); State v. Russo, 333 N.J. Super. 119, 138 (App. Div.

2000). Rule 3:22-10 recognizes the PCR court's discretion to conduct evidentiary hearings.

An evidentiary hearing becomes necessary when a defendant presents a prima facie basis to support the grant of relief by demonstrating a reasonable likelihood that his claim will ultimately succeed on the merits. State v. Preciose, 129 N.J. 451, 462 (1992). A defendant's "bald assertions" that counsel was ineffective will not sufficiently satisfy defendant's prima facie burden; the defendant must allege specific facts demonstrating the deficient performance. State v. Rountree, 388 N.J. Super. 190, 206 (App. Div. 2006); State v. Cummings, 321 N.J. Super. 154 ,170 (App. Div. 1999).

To establish such a prima facie showing, a defendant must demonstrate a reasonable likelihood of succeeding under the two-pronged test set forth in Strickland, 466 U.S. at 687, and adopted by our Supreme Court in Fritz, 105 N.J. at 58. Defendant must prove both deficient performance of counsel and a "reasonable probability" that such performance affected the outcome. Ibid.

Under that test, defendant must specifically demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 52 (quoting Strickland, 466 U.S. at 687). This is a high standard because "counsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The facts maintained by defendant in his PCR petition, that he has lower-than-average intelligence and ADHD, are unaccompanied by documentary evidence. His assertion that these facts, if investigated more thoroughly, would demonstrate whether he was able to fully participate at all stages of the proceeding and whether he had an intellectual disability that might have constituted a defense is, at best, speculative.

Beyond his own assertions, defendant has offered no evidence of having a prior or ongoing intellectual disability. More critically, he has not shown how, even if he had an intellectual disability, that condition would have constituted a defense or otherwise altered the outcome of the proceedings. See State v. Morton, 165 N.J. 235, 250-51 (2000) (evidence of defendant's "borderline intellectual functioning" and enrollment in special education classes determined not to provide justification or excuse for murder).

Here, the PCR court aptly concluded that defendant's contention was "insufficiently . . . supported." Therefore, we reject defendant's argument that he was denied effective assistance of counsel on this issue.

Defendant's claim that his mother should have been called as a witness at his <u>Miranda</u> hearing also lacks merit. In his brief, defendant relies upon a December 9, 2018 investigation report wherein defendant's mother claimed that when she arrived at the Trenton Police Department, she learned her son was already being questioned by police without her knowledge or permission. She further asserted that "[s]he wanted to be present and would never [have] allowed her son to speak with police" without her or a lawyer present.[7]

As the PCR court observed, if defendant's mother had proffered her certification at the <u>Miranda</u> hearing, "the court would have found it wholly incredible." In our opinion on defendant's direct appeal, we noted his mother's non-participation in the interrogation did not render defendant's statements inadmissible, and she was "not tricked, threatened, coerced, or intentionally excluded from" the interrogation. <u>Bethea</u>, slip op. at 17-18. The PCR court's decision was based upon substantial credible evidence in the record.

---

[7] The December 9, 2018 report was prepared after the PCR court's decision. The report is not properly before this court and we will not consider it. "Our rules provide that '[t]he record on appeal shall consist of all papers on file in the court . . . below,'" <u>Liberty Surplus Ins. Corp. v. Nowell Amoroso, PA</u>, 189 N.J. 436, 452 (2007) (alteration in original) (quoting <u>R.</u> 2:5-4), and our Supreme Court "has long held [that] appellate review is limited to the record developed before the trial court," <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 296 n.8 (2012). We therefore, reject defendant's reliance on the report.

Regarding the failure to argue mitigating factor four, which permits a sentencing court to consider whether there "were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense[,]" N.J.S.A. 2C:44-1(b)(4), the PCR court rejected defendant's argument that he had ineffective assistance of counsel. Defendant maintains his sentence is illegal because his alleged trial counsel's ineffectiveness caused defendant to be sentenced to the functional equivalent of life without parole (LWOP).

The PCR court found defendant's argument was procedurally barred under Rule 3:22-5 because this court rejected that claim on direct appeal. In its decision, the PCR court reasoned:

> First, trial counsel's failure to notify the trial court about [defendant's] supposed disability was not problematic. Mitigating factor four, which [defendant] cites as his panacea, permits a sentencing court to consider whether there "were substantial grounds tending to excuse or justify the [defendant's] conduct, though failing to establish a defense." N.J.S.A. 2C:44-1(b)(4). In short, [defendant's] condition does not constitute "substantial grounds tending to excuse or justify the vicious, premeditated murder of a celebrated octogenarian. . . ."
>
> Second, even if it was [inept] for trial counsel to neglect disclosing [defendant's] purported disability, [defendant's] argument would still fall flat, since his condition would not have altered the sentence. Again, neither an ADHD diagnosis nor a below-average intelligence "excuse[s] or justif[ies] cold-blooded

A-2438-18T3

murder." Moreover, the trial court sentenced [defendant] pursuant to and in accordance with a valid plea agreement.

[(footnote omitted) (citations omitted).]

The PCR court was correct in its analysis.

We also reject defendant's claim that the PCR court erred by not applying the holdings in Miller and Zuber to his case. In Miller, the United States Supreme Court held the Eighth Amendment prohibits the imposition of a mandatory life sentence without parole on a defendant convicted of homicide while a juvenile. 567 U.S. at 473, 489. "[T]he Court grounded its decisions on commonly accepted scientific and sociological notions about the unique characteristics of youth and the progressive emotional and behavioral development of juveniles." State in the Interest of C.K., 233 N.J. 44, 68 (2018).

In Zuber, our Court held that "Miller's command that a sentencing judge 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,' applies with equal strength to a sentence that is the practical equivalent of life without parole." 227 N.J. at 446-47 (quoting Miller, 567 U.S. at 480).

The Court held that the factors set forth in Miller must be considered when sentencing defendants to terms that are the practically equivalent to LWOP for

crimes committed as a juvenile: "[the] defendant's 'immaturity, impetuosity, and failure to appreciate risks and consequences'; 'family and home environment'; family and peer pressures; 'inability to deal with police officers or prosecutors' or his own attorney; and 'the possibility of rehabilitation.'" Id. at 453 (quoting Miller, 567 U.S. at 477-78).

The Zuber Court did not categorically prohibit the imposition of sentences on juvenile-aged offenders that are the functional equivalent of LWOP. Id. at 450-52. Instead, the Court stated that "even when judges begin to use the Miller factors at sentencing," some juveniles may appropriately receive long sentences with substantial periods of parole ineligibility, "particularly in cases that involve multiple offenses on different occasions or multiple victims." Id. at 451.

Here, the PCR court correctly found that defendant's sentence and circumstances are quite different than the factual scenarios in Miller and Zuber. Defendant was not sentenced to LWOP or its functional equivalent because he can be paroled at fifty-nine and one-half years old. And, unlike the defendants in the Zuber case, defendant's sentence here was a bargained for term and he

does not face "potential release after five or six decades of incarceration, when [defendants] would be in their seventies and eighties . . . ." Id. at 448.[8]

The PCR court also properly rejected defendant's argument that his sentence should be reconsidered due to revisions to N.J.S.A. 2A:4A-26.1. Defendant contended that the revisions should apply retroactively to his case and he would serve a "significantly lower sentence" if he was subject to the revised statute and "not waived to adult court."

We are persuaded that the PCR court correctly declined to address whether the revisions applied retroactively to defendant's case and we agree "it is clear [defendant] would have been waived into adult court under any statutory scheme." The record shows there was an abundance of evidence to support the offenses of first-degree murder, robbery, and the other charges. The PCR court properly denied defendant's argument because he would have been waived into adult court under either version of N.J.S.A. 2A:4A-26.1.

Finally, the PCR court determined that defendant's pro se arguments mirrored those already adjudicated. We agree. Since none of the alleged errors were established, defendant's argument on cumulative error is devoid of merit.

---

[8] The Zuber defendants were parole eligible at ages seventy-two and eighty-five. 227 N.J. at 428-29.

A-2438-18T3

Here, defendant failed to demonstrate a reasonable likelihood of success on the merits and thus was not entitled to an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION